STATE OF CONNECTICUT *v.* CORNELIUS GREENE
(4916)

DUPONT, C. J., BORDEN and F.X. HENNESSY, Js.

Argued May 7—decision released July 21, 1987

*Martin Zeldis,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Roland D. Fasano,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

F.X. HENNESSY, J. The defendant has appealed from the judgment of conviction of burglary in the second degree in violation of General Statutes § 53a-102, challenging: (1) the refusal of the court to grant a motion for judgment of acquittal at the close of the state's case, at the close of all of the evidence and after the jury returned a verdict of guilty; (2) the court's summary of the testimony of a police officer; (3) the adequacy of the court's instructions regarding accessorial liability; and (4) that portion of the jury instruction which permitted the defendant to be convicted as an accessory although the amended information allegedly charged him only as a principal.[1]

---

[1] A further ground of appeal by the defendant concerning the court's denial of the defendant's request to call certain witnesses was abandoned at oral argument.

The jury could have found the following facts: During the early hours of the morning of October 12, 1984, the home of Frank Perrelli and his wife was burglarized and a file cabinet, jewelry, a jewelry box with the bottom half missing, check boxes containing cancelled checks and personal papers were taken. Those items had been located in the Perrelli's bedroom and thus were not, except during the burglary, accessible to the defendant, whom the Perrellis did not know and had never seen. An automobile matching the description of one seen being driven away from the Perrelli's neighborhood shortly after the burglary was found abandoned the next morning in an area approximately seven miles from the Perrelli's house. The automobile, stolen the day before the burglary, contained a check with the name Perrelli on it and the half of a wooden jewelry box taken from the Perrelli's home. Approximately twenty to twenty-five feet from the automobile, there was a dumpster four and one-half to five and one-half feet high, half filled with garbage, and containing check boxes, cancelled checks and other items belonging to the Perrelli family. The dumpster was infested with hornets and yellowjackets. Two of the check boxes had the defendant's fingerprints on them. During the presentation of the case by the state, Detective Douglas McDonald testified, in response to a question asked by the defendant on cross-examination, that one Kerry Kendall and the defendant knew one another, that they had participated in a burglary together some years before and that Kendall, whose fingerprints had also been found on one of the check boxes, had named the defendant and three others as having been involved in the burglary.

I

At the conclusion of the state's case-in-chief, the defendant moved for a judgment of acquittal, claiming that fingerprint evidence alone is not sufficient to sustain a conviction unless the prints were found under

such circumstances that they could only have been impressed at the time the crime was perpetrated. See *State* v. *Payne,* 186 Conn. 179, 182, 440 A.2d 280 (1982); *State* v. *Mayell,* 163 Conn. 419, 426, 311 A.2d 60 (1972). The defendant argues that since the property with the defendant's fingerprint on it belonging to the Perrellis was found in a dumpster which was miles from the scene of the burglary and located in an area easily accessible to the public, the only fact that the jury could reasonably infer was that the defendant recently had touched the property. Without further testimony placing the defendant at the place and time the crime was committed, the fingerprints alone would not, he argues, be sufficient to allow the court to correctly deny the defendant's motion for a judgment of acquittal.

The state claims that evidence to the effect that the defendant's fingerprints had been found on the check boxes found near a stolen car which was seen leaving the area of the crime shortly after the crime had been committed and which contained property stolen from the Perrelli home, could lead a jury reasonably to conclude that the defendant had participated in the burglary.

The two part standard for gauging the sufficiency of evidence in a criminal case is as follows: we first view all of the evidence in the light most favorable to the verdict; we then determine whether a jury could have reasonably concluded from that evidence and all the reasonable inferences which it yields that the defendant was guilty beyond a reasonable doubt. *State* v. *Parent,* 8 Conn. App. 469, 472–73, 513 A.2d 725 (1986).

The evidence in this case regarding the stolen property in the dumpster and in the car is capable of differing inferences consistent with guilt or innocence, depending upon the interpretation of the facts and

inferences drawn therefrom. Evidence which yields contrary inferences does not, however, require an inference consistent with innocence. The jury can draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. *State* v. *Tatem,* 194 Conn. 594, 598, 483 A.2d 1087 (1984); *State* v. *Dumlao,* 3 Conn. App. 607, 616–17, 491 A.2d 404 (1985).

A jury could reasonably and logically conclude that the defendant had participated in the burglary. First, the jury could infer that the car in which the goods stolen from the Perrelli home were found was the same car seen leaving the victims' neighborhood by a police officer shortly after the burglary, and was therefore the car transporting the burglars. This car was found abandoned near the dumpster which contained the check boxes stolen from the Perrellis. The photographic and testimonial evidence demonstrated that the check box was buried beneath other personal effects of the Perrellis' and other trash, that there was nothing of apparent value visible to attract any passerby, and that the contents of the dumpster were not readily accessible to any curious passerby due to the infestation of hornets and yellowjackets. In fact, due to the presence of the insects, the police needed the assistance of a maintenance worker wearing gloves to recover evidence from the dumpster. McDonald testified that Kendall had implicated the defendant as a participant in the burglary. McDonald also testified that both men had previously committed a burglary together. Additionally, the defendant's fingerprints were found on the check boxes recovered from the dumpster, which raised the permissible inference that the defendant possessed the property. " '[T]he circumstantial evidence of possession of recently stolen property raises a permissible inference of criminal connection with the property . . . .' " *State* v. *Liscio,* 9 Conn. App. 121, 127, 516

A.2d 1366 (1986), cert. denied, 202 Conn. 803, 519 A.2d 1208 (1987). When all of this evidence is taken together, the jury could reasonably conclude that the defendant stole the property from the Perrelli's house. The court, therefore, was not in error in denying the defendant's motion for judgment of acquittal after the state had presented its case.

The argument by the defendant that this court should no longer adhere to the waiver rule[2] need not be addressed because under the facts of this case the jury at the close of the state's case could have concluded, on the basis of the evidence recited above, that the defendant was guilty of the crime with which he was charged.

## II

The second contention by the defendant is that the court erred by summarizing the testimony of a police officer incorrectly, thereby misleading the jury. The court told the jury that the police officer testified that he was told that the defendant "took part in" the burglary. The actual testimony was that the defendant was "involved in" the burglary.

Jury instructions need "not be exhaustive, perfect or technically accurate," as long as they are "correct in law, adapted to the issues and sufficient for the guidance of the jury." *Castaldo* v. *D'Eramo,* 140 Conn. 88, 94, 98 A.2d 664 (1953). "An error in instructions in a criminal case is reversible error when it is shown that

---

[2] The waiver rule provides: "When a motion for acquittal at the close of the state's case is denied, a defendant may not secure appellate review of the trial court's ruling without foregoing the right to put on evidence in his or her own behalf. The defendant's sole remedy is to remain silent and, if convicted, to seek reversal of the conviction because of insufficiency of the state's evidence. If the defendant elects to introduce evidence, the appellate review encompasses the evidence in toto." *State* v. *Rutan,* 194 Conn. 438, 440, 479 A.2d 1209 (1984).

it is reasonably *possible* for errors of constitutional dimension or reasonably *probable* for nonconstitutional errors that the jury were misled." *State* v. *Mason,* 186 Conn. 574, 585–86, 442 A.2d 1335 (1982).

The jury charge also contained the following statement by the court: "[I]f either my remarks or the lawyers' remarks differ from anything that you'll recall then by all means follow your own recollection of just what the evidence was . . . ."

The cautionary language set forth in the jury instruction coupled with the closeness of meaning between the phrase "took part in" and the word "involved," meaning "to draw in as a participant"; Webster, Third New International Dictionary; convinces us that the instruction as given, and not objected to, did not mislead the jury.

### III

The defendant next claims that the court's instruction on accessory liability did not adequately inform the jury of the requisite intent necessary to establish the defendant's guilt as an accessory. The claim is that the defendant must have had the intent to commit a burglary and that he intentionally aided in the commission of the burglary. It is the contention of the defendant that the court's instruction to the jury failed to guide the jury properly regarding the nature of and the interplay between the two intents necessary to convict.

The accessory statute, General Statutes § 53a-8, sets forth the element of intent as a twofold requirement: that an accessory have the intent to *aid* the principal; *and* that in so aiding he intended to *commit* the offense with which he is charged. *State* v. *Haddad,* 189 Conn. 383, 399, 456 A.2d 316 (1983). "The defendant took no exception to this portion of the charge at trial. Ordinarily such a failure would render the claim

unreviewable on appeal. Practice Book § [852]. However, because the failure adequately to instruct the jury on each essential element of the crime charged, including intent, might result in a due process violation implicating the fairness of this trial, we will consider this issue. . . . The extent of our review of a constitutional issue raised for the first time on appeal is limited. We must determine whether, 'considering the substance of the charge rather than the form of what was said, it is reasonably possible that the jury was misled.' " (Citations omitted.) *State* v. *Sinclair,* 197 Conn. 574, 580–81, 500 A.2d 539 (1985).

Jury instructions are calculated to give the jurors a clear understanding of the elements of the crime charged, and to afford them proper guidance for their determination of whether those elements were present. *State* v. *Smith,* 194 Conn. 213, 219, 479 A.2d 814 (1984). If these goals are reached, the instruction will be deemed constitutionally adequate.

The court read the wording of General Statutes § 53a-8, the accessory statute for acts of another, to the jury including the requirement that the defendant act with the "mental state required for commission of an offense" and the wording "intentionally aids another person." The court further included in its instruction to the jury the following: "A person acts intentionally, with respect to a result or to conduct described by a statute defining an offense, when his conscious objective is to cause such a result or to engage in such conduct. You cannot presume intent but you can infer it from the acts that were committed."

It is clear that the jury was told that the defendant had to intend to aid another in the commission of the crime. The jury was also told what "intent" is when the court gave the general charge on intent. Additionally, none of the descriptive words in § 53a-8 is so com-

plex or rooted in legal meaning as to render the average juror incapable of understanding its meaning. The court's reading of the statute sufficed to make it clear that, prior to finding the defendant guilty, the jury was obligated to find that he intended to aid or abet another in committing the crime charged. *State* v. *Giannotti,* 7 Conn. App. 701, 706, 510 A.2d 451, cert. denied, 201 Conn. 804, 513 A.2d 700 (1986).

There was no error in the court's instruction to the jury on accessory liability.

## IV

The defendant further argues that the court was in error when it instructed the jury to consider accessory liability when the defendant was charged as a principal. The defendant claims that whether he was a principal or an accessory are two mutually exclusive theories of liability.

The wording of the jury instruction, "[i]t is not necessary that the state prove that this particular defendant acted alone or that he actively took part in the burglary . . . " is claimed by the defendant to have misled the jury so that the jury could have found that the defendant did not take part in the burglary and at the same time was guilty of the burglary.

There is no such crime as being an accessory. The accessory statute merely provides an alternate means by which a substantive crime may be committed. *State* v. *Baker,* 195 Conn. 598, 608, 489 A.2d 1041 (1985). Although the information included only the language of General Statutes § 53a-102, the defendant cannot be heard to complain that the jury was instructed on both principal liability and accessory liability under General Statutes § 53a-8. *State* v. *Edwards,* 201 Conn. 125, 131, 513 A.2d 669 (1986). The law in this state clearly holds that the fact that the defendant was not formally

charged as an accessory does not preclude his being so convicted. *State* v. *Crump,* 201 Conn. 489, 493, 518 A.2d 378 (1986); *State* v. *Johns,* 184 Conn. 369, 373–74 n.7, 439 A.2d 1049 (1981).

The wording of the jury instruction is not to be read out of context or in a vacuum. The court obviously did not instruct the jury to find the defendant guilty of burglary in the second degree even though they found that the state did not prove that he took part in the burglary. It is clear that the court was referring to that portion of General Statutes § 53a-8 which was read to the jury, which allows a person who intentionally aids another to engage in conduct which constitutes an offense to be prosecuted and punished as if he were the principal offender.

There is no error.

In this opinion the other judges concurred.