## STATE OF CONNECTICUT *v.* MATTHEW C. PYLES
### (6852)

BORDEN, DALY and STOUGHTON, Js.

Argued December 21, 1988—decision released February 14, 1989

*Eddi Z. Zyko,* for the appellant (defendant).

*Geoffrey E. Marion,* deputy assistant state's attorney, with whom, on the brief, were *Thomas E. Gomberg,* assistant state's attorney, and *Pamela Weidman,* legal intern, for the appellee (state).

DALY, J. The defendant appeals from a judgment of conviction, after a jury trial, of larceny in the second

degree in violation of General Statutes § 53a-123.[1] On appeal the defendant claims that the trial court erred (1) in admitting two documents into evidence under the business record exception to the hearsay rule, and (2) in its instructions to the jury. We find no error.

The jury could reasonably have found the following facts. In November, 1986, the defendant was employed as the manager of a gas station and convenience store located in Southington and owned by Shuck Petroleum Company. As manager, the defendant was responsible for calling Kathy Murphy, Shuck's district supervisor, every weekday morning to report the sales figures for the previous day of business. The sales figures were compiled from paperwork consisting of such items as the receipts from the cash register, the gas console and the credit card machine. The defendant was responsible also for sending this paperwork to Shuck's main office once a week, and for depositing the previous day's proceeds at the bank after phoning the sales figures in to Murphy.

On Monday, November 24, 1986, the defendant made his daily call to Murphy and reported the sales figures for November 21, 22 and 23. The defendant informed Murphy that the sales were $4360 for November 21, $4100 for November 22 and $3150 for November 23.

At approximately noon on November 24, Murphy visited the defendant at the Southington store and discussed with him his apparent inability to comply with the company policy of making the daily bank deposits

---

[1] General Statutes § 53a-123 provides in pertinent part: "A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and: (1) The property consists of a motor vehicle, the value of which exceeds five thousand dollars, (2) the value of the property or service exceeds five thousand dollars, (3) the property, regardless of its nature or value, is taken from the person of another, or (4) the property is obtained by defrauding a public community, and the value of such property is two thousand dollars or less."

by 2 p.m. Two and one-half hours later, Murphy received a phone call from the defendant, informing her that he was quitting and would leave the keys to the store at the Southington police department.

That night, Murphy, Pamela Corey, who was a Shuck office clerk, and two others went to the Southington store, where they discovered that the store's paperwork, including the tape from the cash register, was missing. Murphy was unable to compute the day's totals from either the cash register or the gasoline console.

The following day, November 25, Murphy went to the bank to determine whether any deposits had been made the day before. She found that early on the morning of November 24 the defendant had deposited the store's proceeds for November 19, 20 and 21. No deposits had been made, however, for November 22 or 23. Joyce Kelly, a bookkeeper for Shuck, testified that the paperwork for the Southington store for the period of November 20 through 23 was never mailed to the Shuck offices.

The defendant's first claim is that the trial court erred in admitting into evidence two of the state's exhibits under the business records exception to the hearsay rule.

One of the state's exhibits was the November, 1986 sales journal for the Southington store. This document was prepared monthly by the Shuck office clerks. The figures posted in the journal were taken from the paperwork that the defendant had sent in weekly to the main office. When the state offered the document as an exhibit during the direct examination of Kelly, the defendant objected, claiming that the document did not qualify as a business record. The trial court admitted the journal into evidence. The defendant then further objected to the admission of the information contained

on line twenty-four of the journal, claiming it was hearsay.[2] The court overruled that objection.

Another of the state's exhibits was the November, 1986 daily call-in sheet for the Southington store. Entries were made daily to this document by Murphy. The figures posted in the call-in sheet were obtained from the daily calls made to Murphy by the defendant. The state also offered this document during Kelly's direct examination. The defendant's objection to the admission of this document as a business record was overruled.

The standards governing the admissibility of evidence proffered under the business records exception to the hearsay rule are set forth in General Statutes § 52-180.[3] The three requirements that must be satisfied are (1) that the record was made in the regular course of business, (2) that it was the regular course of business to make the writing, and (3) that the writing was made at the time of the transaction or occurrence or within a reasonable time thereafter. *State* v. *Waterman,* 7 Conn. App. 326, 341, 509 A.2d 518, cert. denied, 200 Conn. 807, 512 A.2d 231 (1986). Moreover, the business record must be based upon the entrant's own observations or upon information transmitted to him by an observer whose business duty it was to transmit the information to the entrant. *State* v. *Sharpe,* 195 Conn. 651, 663, 491 A.2d 345 (1985); *D'Amato* v. *Johnson,* 140 Conn. 54, 59, 97 A.2d 893 (1953).

---

[2] Line 24 of the monthly sales journal contained the entry made by Murphy that "no sales available for [November 24, 1986]—Matthew quit and took everything."

[3] General Statutes § 52-180 provides in pertinent part: "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter."

The defendant has raised several technical claims of error with respect to the admission of these documents. Our courts, however, have consistently construed § 52-180 liberally. See *Jefferson Garden Associates* v. *Greene,* 202 Conn. 128, 141, 520 A.2d 173 (1987), and cases cited therein; *Shuchman* v. *State Employees Retirement Commission,* 1 Conn. App. 454, 457–58, 472 A.2d 1290 (1984). We cannot say that the trial court abused its discretion in allowing the two documents into evidence. The testimony showed that both documents were prepared in the ordinary course of business and that it was in the ordinary course of Shuck's business to prepare the monthly sales journal and the daily call-in sheet. Moreover, the entries on the call-in sheet were made every weekday morning following the defendant's call to Murphy and the entries on the sales journal were made once a week following the arrival in the mail of the paperwork sent by the defendant to Shuck's main office. Both documents qualified for admissibility under § 52-180; accordingly, the trial court did not err in allowing the documents into evidence.

The defendant's final claim of error concerns the trial court's instructions to the jury. He claims specifically that a portion of the charge constituted an unfair comment on the evidence and that it unduly emphasized a portion of the state's case, thereby prejudicing him.

The following facts are relevant to this claim. During cross-examination, the prosecutor asked the defendant why he failed to deposit the sales proceeds, noting that the amount of cash in question was $7000. The defendant objected to the question, claiming that there was no evidence establishing that figure. The court sustained the objection, despite the state's argument that it had established that the defendant had called in $4100 and $3150 as daily sale amounts to Murphy but the money had never been deposited. The next day the court acknowledged it had made a mistake in ruling

there had been no evidence regarding the sum of approximately $7000. The court denied the state's motion to reopen the case and instead gave a curative instruction to the jury.[4] The defendant took an exception to this instruction.

" ' "To determine whether an error in a charge constitutes reversible error, the court must consider the whole charge. . . . In considering the charge as a whole we eschew critical dissection . . . thereby not passing upon the instructions attacked in 'artificial isolation' from the whole charge." ' " (Citations omitted.) *State v. Reddick,* 15 Conn. App. 342, 351, 545 A.2d 1109 (1988), quoting *State v. Marshall,* 3 Conn. App. 126, 129, 485 A.2d 930 (1985). Jury instructions will be upheld if they are correct in law, adapted to the issues and sufficient for the guidance of the jury. *State v. Greene,* 11 Conn. App. 575, 580, 528 A.2d 855, cert. denied, 205 Conn. 804, 531 A.2d 938 (1987). The trial court may, in its discretion, make reasonable comments on the evidence; *State v. Ryerson,* 201 Conn. 333, 348, 514 A.2d 337 (1986); provided it does not direct or advise the jury how to decide a particular matter. *State*

---

[4] The court charged the jury as follows: "Now, there was a dramatic incident here which I don't want to overemphasize, but I do think that in the interest of justice I should remark on it. You may remember that earlier in the proceedings Mr. Gomberg made and incorporated into a question a certain amount of money, and I sustained the objection on the ground that I didn't recall testimony as to that amount of money. Now, I may have ruled on the objection in such a way as to make you think that I am suggesting to you that he didn't take anything. That was not my intention. It was not what I had in mind. It was simply at the time I did not recall what amount of money was stated by an earlier witness.

"Now, as I say, please don't put this out of perspective. I made a mistake in misunderstanding what was going on, and I simply mentioned it in order to straighten out that mistake, but don't put it out of perspective simply because I am remarking on it at this time. It doesn't mean I am suggesting to you that you believe or disbelieve anything. I simply don't want you to be misled because of the fact that I probably had a poor choice of words."

v. *Taylor,* 196 Conn. 225, 232, 492 A.2d 155 (1985); *State* v. *Gallman,* 16 Conn. App. 433, 435, 547 A.2d 932 (1988).

In reviewing the charge as a whole, we note that the jury was repeatedly instructed that it was the sole arbiter of the facts, and that, while the court was free to comment on the evidence, the jury was not bound by these comments. Moreover, in making the challenged instruction, the court merely clarified for the jury its misunderstanding of the evidence. The court's comment neither emphasized any portion of the state's case nor directed the jury how to decide the case. The charge, as a whole, was sufficient for the jury's guidance and was not misleading.

There is no error.

In this opinion the other judges concurred.