# State of Connecticut *v.* Darrell Holeman
## (6545)

Borden, Daly and Foti, Js.

Argued January 31—decision released April 18, 1989

*Bruce A. Sturman,* public defender, for the appellant (defendant).

*Rita M. Shair,* deputy assistant state's attorney, with whom, on the brief, were, *C. Robert Satti, Sr.,* state's attorney, and *John Cocheo,* assistant state's attorney, for the appellee (state).

Foti, J. The defendant appeals from a judgment of conviction, rendered after a jury trial, of possession of heroin with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b).[1] The defendant claims that the trial court erred (1) in allowing opinion testimony as to the ultimate issue of intent to sell, and (2) in excluding evidence as to a third party's culpability. We find no error.

The jury could reasonably have found the following facts. On March 13, 1987, at approximately 9 a.m., Officer William Discordia of the New London police department's drug enforcement unit received an anonymous phone call that prompted him to conduct a surveillance, from his third floor office in the police department, of an apartment complex approximately 600 feet away at 65 Federal Street. The apartment complex is known by the New London police for its high incidence of drug related activity. With the aid of binoculars, Discordia watched the area for approximately one hour and fifteen minutes. During that time, he observed two men, whom he recognized to be the defendant and James

---

[1] General Statutes § 21a-278 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marihuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

The defendant was aquitted of the charge of being an accessory to possession of heroin with intent to sell in violation of General Statutes §§ 53a-8 and 21a-278 (b).

Holder,[2] standing next to each other. During the course of the surveillance, several unnamed individuals approached Holder, gave him an item and then walked over to the defendant, who gave them an item. Several times the defendant walked to a building approximately ten feet from where he and Holder had been standing and placed an unidentifiable object on the ground near a doorway. No one other than the defendant was observed in the area near the doorway.

On the basis of his narcotics training and experience, Discordia believed that the two were engaged in the sale of narcotics. Discordia enlisted the aid of Officer Michael Gaska and, when Discordia observed the defendant again walk over to the building and deposit something on the ground, the two officers left the department and ran across the street to retrieve the item. It took the officers approximately five minutes to traverse the distance between the department and the scene. The defendant and Holder were out of the officers' sight for approximately two minutes. Gaska detained the defendant and Holder while Discordia searched the area. Discordia's search uncovered a black magnetic key case attached to a drain pipe. The case contained two glassine envelopes stamped "Blue Thunder" which contained white powder. The white powder was field tested and determined to be heroin. A subsequent state toxicology test confirmed the field test. The defendant and Holder were arrested and a search of the two resulted in the seizure of $138 from the defendant and $1336 from Holder.

I

The defendant first claims that the trial court erred in permitting Discordia to testify as an expert concerning the significance of the manner in which the defend-

---

[2] James Holder and the defendant were tried jointly but filed separate appeals. See *State* v. *Holder,* 18 Conn. App. 184, 557 A.2d 553 (1989).

ant and Holder had folded the money seized. The defendant argues that this testimony was irrelevant and impinged on the jury's function to determine the ultimate issue of the defendant's intent to sell. We disagree.

Discordia testified that he had seized $1336 from Holder and $138 from the defendant. The money was divided into individual packets of $100. Each grouping of $100 was folded over once, and then "layered" on top of the other. The remaining bills were grouped together. The entire bundle was held together with a rubber band. The state's attorney asked Discordia whether the manner in which the money had been folded had any special significance. Discordia responded: "In the past during my investigations and drug arrests, I have found drug dealers with large sums of money like that in individual hundreds for their fast use of changing money, knowing where their—knowing how much they have at hand quickly, all indicated to me that it was drug money."

The defendant does not challenge the trial court's preliminary determination that Discordia was qualified to testify as an expert. Rather, the defendant first contends that Discordia's testimony was not reflective of a special knowledge or skill that went beyond the knowledge of the average juror. We find this argument without merit.

"Generally, expert testimony is admissible if (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." *State* v. *Kemp,* 199 Conn. 473, 476, 507 A.2d 1387 (1986); *State* v. *Dumlao,* 3 Conn. App. 607, 609–10, 491 A.2d 404 (1985). When an expert opinion arguably goes to the ultimate issue, it is properly per-

mitted when the trial court determines that the jury requires assistance in making an intelligent finding on the issue. *State* v. *Vilalastra,* 207 Conn. 35, 41, 540 A.2d 42 (1988). The trial court has wide discretion in ruling on the admissibility of an expert opinion and the trial court's decision will not be disturbed absent an abuse of discretion. Id., 45; *State* v. *Kemp,* supra.

The quantity of money seized from a defendant and the manner in which that money was folded or "layered" is relevant to the issue of intent to sell. See *State* v. *Ruth,* 16 Conn. App. 148, 155, 547 A.2d 548 (1988); *State* v. *Uribe,* 14 Conn. App. 388, 393–94, 540 A.2d 1081 (1988). It cannot be assumed, as the defendant contends, that information relating to the manner in which drug dealers layer money and the reasons for doing so is within the common knowledge of the average juror. See *State* v. *Grayton,* 163 Conn. 104, 111, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495 (1972). Furthermore, such evidence is commonly admitted as circumstantial evidence of a defendant's intent to sell. *State* v. *Ruth,* supra; *State* v. *Uribe,* supra. We conclude that in finding that Discordia's testimony was relevant and would aid the jury, the trial court acted within its discretion.

The defendant next maintains that Discordia's testimony allowed the jury to infer that the money in this case was earned from selling heroin. This testimony, he claims, impinged on the jury's role to determine the ultimate issue of intent to sell.

We have recently had the occasion to review this issue. "As a general principle, '[a]n expert witness may not express an opinion on an ultimate issue of fact, which must be decided by the trier of fact. *State* v. *Donahue,* 141 Conn. 656, 667, 109 A.2d 364 (1954), appeal dismissed and cert. denied, 349 U.S. 926, 75 S.

Ct. 775, 99 L. Ed. 1257 (1955). "Experts can [however,] sometimes give an opinion on an ultimate issue where the trier, in order to make intelligent findings, needs expert assistance on the precise question on which it must pass. *State* v. *Johnson,* 140 Conn. 560, 563, 102 A.2d 359 (1954).'' ' *State* v. *Vilalastra,* [supra, 41]. A trial court has broad discretion in admitting 'expert testimony concerning the sale of illicit drugs.' Id., 45.'' *State* v. *Nelson,* 17 Conn. App. 556, 564–65, 555 A.2d 426 (1989).

In *State* v. *Vilalastra,* supra, the Supreme Court distinguished between expert opinions that relate to the defendant directly, which are improper, and opinions that relate to the custom and trade of drug traffickers generally, which are entirely proper. Therefore, although it is improper for the state to elicit testimony from an expert as to whether the defendant was a seller or user of drugs, "it is wholly appropriate to inquire into the custom and practice of narcotics traffickers generally." *State* v. *Nelson,* supra, 566.

The defendant contends that Discordia's statement that "all indicated to me that was drug money," referred to the money in this case rather than money generally and, therefore, his testimony crossed the line of proper inquiry. We disagree with the defendant's interpretation of Discordia's testimony and conclude that the trial court could have reasonably found, taking Discordia's testimony in context, that he was referring to drug trafficking generally. The assistant state's attorney, therefore, did not elicit, nor did Discordia volunteer, an opinion as to the ultimate issue in the case, namely, whether the defendant possessed the heroin with the intention of selling it. Rather, Discordia gave his opinion as to the customary practice of drug dealers of layering money in $100 denominations.

To the extent that this testimony may have been understood by the jury to relate to the defendant's conduct in this case, Discordia's testimony would still be proper. "Expert witnesses may testify that certain behavior by a defendant or his possession of particular items is conduct similar to that engaged in by the typical drug dealer." *State* v. *Vilalastra,* supra, 45. This testimony was therefore proper under the standard enunciated in *State* v. *Vilalastra,* supra.[3]

## II

The defendant's next claim is that the trial court erred in disallowing testimony that a third person, M, could have committed the crime. We find no error.

In his offer of proof, the defendant sought to introduce evidence that ten days after he was arrested Discordia observed M engaging in essentially the same activities that led to the defendant's arrest. An arrest warrant prepared by Discordia revealed that he had observed M in a parking lot near the same apartment complex on Federal Street where the defendant was arrested. After observing M for some time, Discordia went to the area where M was observed and retrieved

[3] If we view Discordia's testimony as the defendant advances, then the defendant is correct that Discordia's opinion provided circumstantial evidence from which the jury could infer the defendant's intent to sell. This inference is, however, entirely permissible.

It is well established that the issue of a defendant's specific intent is usually proved by circumstantial evidence. *State* v. *Vilalastra,* 207 Conn. 35, 42, 540 A.2d 42 (1988); *State* v. *Edwards,* 201 Conn. 125, 151, 513 A.2d 669 (1986); *State* v. *Williams,* 169 Conn. 322, 334, 363 A.2d 72 (1975). It is generally recognized that an officer testifying as an expert may properly give his opinion as to the quantity and purity of a narcotic substance that a defendant possessed or the manner in which a dealer might transport drugs. *State* v. *Vilalastra,* supra, 42–43. The purity level and quantity of drugs possessed, and the manner of transportation permit the jury to infer that the defendant possessed the drugs for the purpose of selling them. For purposes of this inference, there is no significant difference between an expert's testimony as to the quantity of narcotics found and an opinion as to the significance of how the money seized was arranged.

a magnetic key case containing glassine bags of heroin labeled "Blue Thunder." The court denied the defendant's offer of proof, finding no connection between M's arrest and the defendant's arrest ten days earlier. The court concluded that the defendant's position was entirely speculative and raised collateral issues not relative to the issues before the jury.

"A defendant's right to present witnesses and offer evidence is a fundamental element of due process of law. . . . Both this state and other jurisdictions have recognized that a defendant may introduce evidence which indicates that a third party, and not the defendant, committed the crime with which the defendant is charged. . . . The defendant, however, must show some evidence which directly connects a third party to the crime with which the defendant is charged. . . . It is not enough to show that another had the motive to commit the crime . . . nor is it enough to raise a bare suspicion that some other person may have committed the crime of which the defendant is accused. . . . " (Citations omitted.) *State* v. *Echols,* 203 Conn. 385, 392, 524 A.2d 1143 (1987).

The admissibility of such evidence is governed by the rules of relevancy; id., 393; and it is well established that the trial court has wide discretion in its rulings on relevancy. *State* v. *McClendon,* 199 Conn. 5, 8, 505 A.2d 685 (1986). Those rulings will be reversed only if the court has abused its discretion or where injustice appears to have been done. *State* v. *Milner,* 206 Conn. 512, 518, 539 A.2d 80 (1988); *State* v. *Echols,* supra; *State* v. *Smith,* 198 Conn. 147, 157, 502 A.2d 874 (1985).

The defendant argues that M's presence in the area on the day of the defendant's arrest and the similarities between the crimes is sufficient evidence to connect M to the defendant's crime and, therefore, to permit him to introduce this evidence. We disagree, and

conclude that the trial court was correct in finding that there was no evidence directly connecting M with the crime that the defendant was alleged to have committed. Although it is true that on March 13, the day the defendant was arrested, M was in the vicinity, and that he was arrested on that day for breach of peace and again ten days later for sale of heroin, those facts alone do not connect M to the crime that the defendant was alleged to have committed. Discordia testified that, after arresting the defendant, he recognized M as a person for whom the police had an outstanding warrant, and he arrested M for breach of peace. There was no evidence that the police saw M exchange anything with the defendant or approach the doorway where the police found the drugs.

Furthermore, the defendant's identity was not a contested issue at trial. See *State* v. *Echols,* supra, 393–94. It cannot be argued seriously that it was M and not the defendant whom Discordia observed for over one hour. Discordia testified that he had had a clear and unobstructed view of the area where the defendant had been observed, and at trial identified the defendant as one of the two men he had observed engaging in suspicious activity. At trial, Discordia identified the defendant as one of the two people he had observed exchanging items with various people on Federal Street and, he identified the defendant as the only person who had gone to the doorway where the drugs had been found.

We find equally unpersuasive the defendant's argument that the similarities between the crimes for which M and the defendant were arrested is sufficient to connect M to the crime for which the defendant was charged. The methods employed by M and the defendant were neither unusual nor distinctive. Evidence was presented that labeling heroin packets "Blue Thunder" and using a hidden magnetic key case is common prac-

tice in the drug trade. The similarities in the techniques employed, therefore, raise nothing more than a bare suspicion that M committed the crime.

We conclude that the court did not err in refusing to admit evidence of M's arrest.

There is no error.

In this opinion the other judges concurred.