STATE OF CONNECTICUT *v.* JAMES HOLDER, JR.
(6546)

BORDEN, DALY and FOTI, Js.

Argued January 31—decision released April 18, 1989

*Barry J. Ward,* special public defender, for the appellant (defendant).

*Rita M. Shair,* deputy assistant state's attorney, with whom on the brief, were *C. Robert Satti, Sr.,* state's attorney, and *John Cocheo,* assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from a judgment of conviction, after a jury trial, of being an accessory to illegal possession of heroin with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b).[1] On appeal, the defendant claims that the trial court erred (1) in denying his motion to suppress, (2) in permitting improper expert testimony, (3) in excluding evidence concerning possible third party involvement in the crime, (4) in permitting improper prosecutorial arguments to the jury, (5) in instructing

[1] General Statutes § 21a-278 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marihuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

the jury on accessory liability, and (6) in finding sufficient evidence to support the conviction. We find no error.

The facts of this case are set forth in the companion case of *State* v. *Holeman,* 18 Conn. App. 175, 556 A.2d 1052 (1989).[2]

I

The defendant first claims that the court erred in denying his motion to suppress the money seized from him because there was no probable cause to arrest him. In particular, the defendant claims that the initial pat-down search was improper because it occurred prior to the discovery of the drugs.

Certain additional facts are relevant to this claim. At the suppression hearing, Officer William Discordia of the New London police department testified that when he and Officer Michael Gaska arrived at the scene, several people were present, including the defendant. The officers then detained the defendant and Darrell Holeman and, on the basis of their training and experience, conducted a pat-down search for weapons. Discordia then proceeded to the building where he had seen Holeman deposit items and discovered the magnetic key case containing the drugs. After retrieving the key case, Discordia formally arrested the defendant. A search of the two men resulted in the seizure of the money. There was a discrepancy in the testimony, however, as to when the money was actually seized.

The trial court denied the defendant's motion to suppress the money. It held that Discordia's observations had given him reason to believe that the defendant had been engaged in the sale of narcotics and that the officers had acted properly in making the initial pat-down for weapons.

---

[2] Darrell Holeman and the defendant were tried jointly but filed separate appeals. See *State* v. *Holeman,* 18 Conn App. 175, 556 A.2d 1052 (1989).

It is axiomatic that, subject only to a few well defined exceptions, a search conducted without a warrant issued upon probable cause is unreasonable. *State* v. *McNellis,* 15 Conn. App. 416, 420–21, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988). One exception to this rule is the search conducted incidental to a lawful arrest. *Chimel* v. *California,* 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969). Thus, evidence obtained pursuant to a valid search and seizure incident to a lawful arrest is not illegal and is admissible. Id.; *State* v. *McNellis,* supra, 421.

The validity of the defendant's arrest is determined by General Statutes § 54-1f (b), which authorizes a police officer to arrest, without a warrant, any person who the officer has reasonable grounds to believe has committed or is committing a felony. Our courts have equated the term "reasonable grounds" to probable cause. *State* v. *McNellis,* supra.

" 'In order to establish probable cause, it is not necessary to produce a quantum of evidence necessary to convict. . . . Probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that a felony has been committed.' (Citations omitted.) *State* v. *Cobuzzi,* 161 Conn. 371, 376, 288 A.2d 439 (1971), cert. denied, 404 U.S. 1017, 92 S. Ct. 677, 30 L. Ed. 2d 664 (1972). 'In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act.' *Brinegar* v. *United States,* 388 U.S. 160, 175, 69 S. Ct. 1302, 93 L.Ed. 1879 (1949). 'Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. *Texas* v. *Brown,* 460 U.S. 730, [742,] 103

S. Ct. 1535, 75 L. Ed. 2d 502 (1983).' *Three S. Development Co.* v. *Santore,* 193 Conn. 174, 175, 474 A.2d 795 (1984); see also *Babiarz* v. *Hartford Special, Inc.,* 2 Conn. App. 388, 393, 480 A.2d 561 (1984)." *State* v. *Carey,* 13 Conn. App. 69, 73, 534 A.2d 1234 (1987). In testing the amount of evidence that supports probable cause, it is not the personal knowledge of the arresting officer but the collective knowledge of the law enforcement organization at the time of the arrest which must be considered. Id.

On the basis of the facts and circumstances known by Discordia on the morning of March 13, 1987, we conclude that the officers had reasonable grounds to believe that the defendant was engaged in the sale of illegal drugs. Furthermore, "[i]t is by now common knowledge among police officers that sellers of narcotics are frequently armed." *State* v. *Marino,* 17 Conn. App. 677, 683, 555 A.2d 455 (1989); see *State* v. *Amaral,* 179 Conn. 239, 241, 425 A.2d 1293 (1979). We therefore conclude that the officers acted properly and reasonably in conducting the pat-down search for weapons. See *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State* v. *Escobales,* 16 Conn. App. 272, 275, 547 A.2d 553 (1988).

The question remains whether the search was contemporaneous with the arrest, as required by the doctrine established in *Chimel* v. *California,* supra. After Discordia discovered the drugs in the magnetic key case, the defendant was placed under formal arrest. There was a discrepancy in the testimony, however, as to when the money was actually seized. Although the defendant testified that the money was seized prior to the arrest, it was entirely within the prerogative of the court to disbelieve his testimony, which conflicted with that of the officers. See *State* v. *Christian,* 189 Conn. 35, 40, 454 A.2d 262 (1983). Notwithstanding the discrepancy, it is clear that the search was not

remote in time and place from the occurrence of the actual restraint of the defendant and that the two were integral parts of the same incident. *State* v. *Cobuzzi,* supra, 378. "A search may be incident to an arrest even though the search precedes the arrest if adequate grounds exist at the time of the search and both the arrest and the search are integral parts of a single incident." Id. Accordingly, we conclude that the state has sustained its burden of establishing that the search was incident to a lawful arrest. See *State* v. *McNellis,* supra, 421. The trial court did not err in denying the defendant's motion to suppress.

## II

The defendant next claims that the court erred in permitting certain testimony because it embraced opinions on the ultimate issue of the case. He specifically claims error in the court's allowing Discordia's testimony concerning (1) the significance of the manner in which the seized money was folded, and (2) the reason why he left his surveillance post.

## A

The defendant's first challenge to Discordia's testimony is identical to the first claim raised in *State* v. *Holeman,* supra, 177–81, where we decided that the testimony was properly admitted. Accordingly, our decision in that case controls here.

## B

On direct examination, Discordia was asked why he left his surveillance post. He responded that he had done so because, after he observed Holeman walk to the building and place yet another object on the ground, he "felt that there were drugs that were left at that area." The defendant moved to strike the answer on the basis of relevance, and the court overruled the objection. The defendant claims on appeal that the court

erred in refusing to strike that answer because it embraced an opinion on the ultimate issue.

We disagree. Under the standards for the admissability of expert testimony enunciated in *State* v. *Vilalastra,* 207 Conn. 35, 45, 540 A.2d 42 (1988), and discussed in *State* v. *Holeman,* supra, we conclude that the answer was properly allowed by the trial court.

### III

The defendant next claims that the court erred in excluding evidence concerning the possibility of a third party's culpability for the crime. This issue has been fully addressed in the companion case of *State* v. *Holeman,* supra, 181–84. The trial court did not err in excluding the evidence.

### IV

The defendant's next claim is that he was deprived of a fair trial because the state's closing argument included facts not in evidence at trial. In his closing argument, the assistant state's attorney remarked: "The defendants knew Federal Street; they knew it was a high drug activity area and they probably knew—well, you decide whether they probably knew that they were being surveilled." The court overruled the defendant's objection to these comments on the ground that they were reasonable inferences from the evidence presented at trial.

"A prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. *State* v. *Binet,* 192 Conn. 618, 631, 473 A.2d 1200 (1984); *State* v. *Ferrone,* [96 Conn. 160,] 169 [113 A. 452 (1921)]. Statements as to facts which have not been proven amount to unsworn testimony that is not the subject of proper closing argument. . . . " (Citation omitted.) *State* v. *Williams,* 204 Conn. 523, 544, 529 A.2d 653 (1987). A prosecutor may, in closing argument, comment upon

the reasonable inferences that can be drawn from the facts properly in evidence. *State* v. *Kinsey,* 173 Conn. 344, 348, 377 A.2d 1095 (1977).

Our review of the entire trial transcript convinces us that the assistant state's attorney's remark was not improper, and thus did not deprive the defendant of a fair trial. Discordia testified that he had recognized the defendant on sight as he surveyed the area and that he had recognized the defendant through his duties as a New London police officer. Moreover, the defendant was observed for one hour as he stood in one location in a known drug area and had several brief encounters with various individuals. It is a reasonable inference that the defendant, known to a New London police officer and observed in a known drug area within sight of police headquarters, was familiar with the area. Even were we to assume that the prosecutor's remark was improper, we remain unconvinced that the defendant was deprived of a fair trial. The comment was isolated and was not emphasized in the argument. See *State* v. *Falcone,* 191 Conn. 12, 23, 463 A.2d 558 (1983). Additionally, the court instructed the jury that its verdict should be based only on the evidence and that the statements of counsel during closing argument did not constitute evidence. Those instructions served to diminish the impact, if any, the remark may have had on the jury. See *State* v. *Flinter,* 16 Conn. App. 402, 410, 548 A.2d 1 (1988). We conclude that this claim is meritless.

V

The defendant next claims that the court erred in instructing the jury on accessory liability.[3] He claims

---

[3] "[General Statutes] Sec. 53a-8. CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitues an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

specifically that the charge was unduly confusing and that it failed to set out clearly the elements of the crime.[4]

"Whether a charge is possibly misleading depends on the substance rather than the form of what is said." *State* v. *Kurvin,* 186 Conn. 555, 565, 442 A.2d 1327 (1982). Jury instructions are calculated to give the jurors a clear understanding of the elements of the crime charged and to afford them proper guidance for

[4] The relevant portion of the court's charge on accessorial liability is: "Now next I'm going to go on to the information with respect to James Holder, Jr. Again, I'm not going to repeat the instructions that I gave you about possession and intent, but those instructions still apply here. I'll read the information. Mr. Holder is accused of accessory to illegal possession of heroin with intent to sell, and charges that at the City or Town of New London, on the 13th day of March, 1987, the said James Holder, Jr. at Federal Street Project Complex, did commit the crime of accessory to illegal possession of heroin with intent to sell in violation of Statute 53a-8, that's the accessory statute, and 21a-278 (b), which is the underlying statute. Now remember that a person is criminally liable for a criminal act if he directly commits or if he is an accessory to the criminal act of another. This basic principle is stated in the law as follows: 'A person, acting with the mental state required for the commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct . . . .'

"The underlying charge here is—I'll repeat the elements of the underlying charge. The defendant, this is the underlying charge, the defendant knowingly possessed a narcotic substance, here heroin; that he possessed it with the intent to sell that substance; that at the time he possessed it, he was not a drug-dependent person, and that, of course, would be Mr. Holder, at the time of engaging in this Mr. Holder was not a drug-dependent person. If you find the State has proven—well, all right, these are the elements of the underlying offense. I'm not going to repeat all of the details of this, as I did before, but remember to find Mr. Holder guilty of this offense you must find it has been proven beyond a reasonable doubt that, as alleged in the information and in accordance with these instructions, that he acted with the kind of mental state required for the commission of the crime of illegal possession of heroin with intent to sell, and at the time he was a non-drug-dependent person, I've explained that offense to you, and with the mental state required for the commission of that crime, he intentionally solicited, requested, commanded, or aided another person, this is Mr. Holeman, to engage in conduct to constitute the offense of illegal possession of heroin with intent to sell."

their determination of whether those elements were present. *State* v. *Smith,* 194 Conn. 213, 219, 479 A.2d 814 (1984).

A charge to the jury is to be considered as a whole and is not to be critically dissected. *State* v. *Pyles,* 17 Conn. App. 460, 465, 553 A.2d 1152 (1989). A jury charge will be upheld if it is correct in law, adapted to the issues and sufficient for the guidance of the jury. Id., citing *State* v. *Greene,* 11 Conn. App. 575, 580, 528 A.2d 855, cert. denied, 205 Conn. 804, 531 A.2d 938 (1987).

In order to establish accessory liability, the state must prove beyond a reasonable doubt that the accused had the intent to aid the principal and that in doing so he intended to commit the substantive offense with which he is charged. *State* v. *Vincent,* 194 Conn. 198, 207, 479 A.2d 237 (1984). Our review of the record indicates that the court's instruction included all of the elements of accessorial liability and it reiterated the elements of the underlying charge. Moreover, the court inserted into its instruction the names of the defendants with respect to the crimes with which they were charged. We are unpersuaded by the claim that this effort at clarification somehow served to confuse the jury. We conclude that the court's instruction, taken as a whole, guided the jury to a clear understanding of the offense.

## VI

The defendant's final claim is that there was insufficient evidence to support the jury's guilty verdict. The defendant appears to argue (1) that the state failed to prove that Holeman possessed the drugs and that, therefore, he could not be guilty as an accessory, and (2), in the alternative, that if Holeman did possess the heroin there was insufficient evidence to link him to any criminal activity of the codefendant. Accordingly,

he claims that the court erred in denying his motion for judgment of acquittal. We disagree.

"When a claim on appeal challenges the sufficiency of the evidence we first review the evidence in the light most favorable to sustaining the jury's verdict; next we determine, whether, upon the facts established and the inferences reasonably drawn therefrom, 'the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt.' *State* v. *Simino,* 200 Conn. 113, 117, 509 A.2d 1039 (1986); *State* v. *Summerville,* 13 Conn. App. 175, 184–85, 535 A.2d 818 (1988). Our inquiry focuses on whether ' "a rational trier of fact could find guilt proven beyond a reasonable doubt." ' *State* v. *Scielzo,* 190 Conn. 191, 197, 460 A.2d 951 (1983), quoting *Jackson* v. *Virginia,* 443 U.S. 307, 317–18, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)." *State* v. *Delarosa,* 16 Conn. App. 18, 33, 547 A.2d 47 (1988). As previously stated, in order to prove accessory liability, the state must prove beyond a reasonable doubt that the defendant had the intent to aid the principal and that in doing so he intended to commit the substantive offense with which he is charged. *State* v. *Vincent,* supra, 207.

From the evidence adduced at trial, the jury could reasonably have concluded that the pair was working as a team. The jury could have concluded further that the defendant acted as the recipient of the purchase money for the heroin while Holeman had the job of controlling the glassine bags of narcotics at the cache and dispensing them to the purchasers. Holeman's actions clearly established the necessary dominion and control over the narcotics to constitute sufficient evidence of possession. Moreover, the jury could reasonably have concluded that the defendant's actions in acting as the receiver of drug purchase money were evidence of his intent both to aid Holeman and to commit the crime.

See *State* v. *Tucker,* 9 Conn. App. 161, 164, 517 A.2d 640 (1986). We conclude that there was sufficient evidence to sustain a verdict of guilty.

There is no error.

In this opinion the other judges concurred.