STATE OF CONNECTICUT *v.* JOHN SMITH
(10834)

SPEZIALE, C. J., PETERS, HEALEY, SHEA and GRILLO, Js.

Argued June 7—decision released August 7, 1984

*Jon C. Blue,* assistant public defender, with whom, on the brief, was *Jean E. Blue,* assistant public defender, for the appellant (defendant).

*Steven M. Sellers,* deputy assistant state's attorney, with whom were *John M. Massameno* and, on the brief, *Rudolph Shupick,* assistant state's attorneys, for the appellee (state).

SPEZIALE, C. J. After a jury trial, the defendant, John Smith, was convicted of the crimes of burglary in the third degree in violation of General Statutes § 53a-103 and criminal impersonation in violation of General Statutes § 53a-130. Each charge was based on a separate information. The defendant now brings a combined appeal from the judgments, claiming the trial court

erred: (1) in its instructions to the jury on the burglary charge; and (2) in its denial of the defendant's motion for judgment of acquittal of criminal impersonation because of insufficient evidence.[1] We find no error in the trial court's burglary instructions but we agree the trial court did err in not granting the defendant's motion for judgment of acquittal on the impersonation charge because of the insufficiency of the evidence.

The jury could reasonably have found the following facts: On October 20, 1979, at approximately 3 a.m. Patrolmen Thomas Russell and Henry Richards of the Bridgeport police were dispatched to the Hitchcock Gas Engines Company shipyard in Bridgeport to investigate the activation of a burglar alarm. Ten or fifteen minutes later a Hitchcock employee who had also been notified of the alarm arrived at the shipyard. The employee let the policemen into the shipyard and then into the main shop building. The employee and the two policemen had just started up the stairs to the office area of the building when Russell saw someone run across the back of the building. Russell gave chase and caught the man later identified as the defendant as he was trying to get out a back door. The chase lasted approximately ten to fifteen seconds. A subsequent search of the premises revealed a ladder propped against an open window and marks of an unsuccessful attempt of forcible entry on one of the doors. Several padlocked drawers containing employees' tools had been broken open inside the shop. A Hitchcock employee later discovered the loss of a set of keys which he had left in a pair of pants inside the building. These keys were recovered from the Bridgeport police.

The defendant was taken to Bridgeport police headquarters and turned over to the booking officer. The

---

[1] The defendant's third claim is that General Statutes § 53a-130 is unconstitutionally vague and overbroad. Because we agree with the defendant's second claim of error, we do not reach the constitutional issue.

defendant was searched and his personal effects, which included a set of keys,[2] were inventoried and stored. When the defendant was asked his name, he refused to answer for fifteen to twenty minutes and then identified himself as Sam James. He was fingerprinted and photographed and his true name was eventually established through his fingerprints. The defendant was then interviewed by a bail commissioner and told the commissioner his true name. The defendant had a prior criminal record, had once failed to appear for a court appearance, and was on probation at the time of his arrest. Once this information was made available to the bail commissioner through the revelation of the defendant's true name, the defendant's bail bond was set at $10,000. According to the testimony of the bail commissioner, if the defendant had been able to convince the police that he was in fact someone without a criminal record, his bail would have been substantially lower.

I

The defendant's first claim of error concerns the trial court's charge to the jury on the burglary count. General Statutes § 53a-103 (a) provides that "[a] person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein." The state argued at trial that it need not prove what crime the defendant intended to commit inside the building. The trial court did not explicitly instruct the jury on any particular crime in its charge regarding this element of burglary. The defendant asserts that this lack of specificity in the jury instructions deprived him of due process of law because it allowed the jury to find him guilty without necessarily finding all of the elements of burglary to have been proved beyond a reasonable doubt.

___

[2] There is no direct evidence in the record that the keys taken from the defendant were the missing Hitchcock keys.

The defendant admits he did not request a bill of particulars, did not submit a request to charge on the definition of burglary, and failed to except to the trial court's instructions.[3] Because this issue was not properly raised below; Practice Book § 854;[4] this court is not bound to consider the defendant's challenge to the instructions on appeal unless the defendant's allegations raise a claim that he has clearly been deprived of a fundamental constitutional right and a fair trial. See *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). The right to be acquitted unless proven guilty beyond a reasonable doubt of each element of the charged offense is a fundamental constitutional right protected by the due process clauses of the federal and Connecticut constitutions. U.S. Const., amend. XIV; Conn. Const., art. I § 8; see *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Gabriel,* 192 Conn. 405, 413–14, 473 A.2d 300 (1984). This court has consistently held that colorable claims that jury instructions violated this aspect of due process are appealable even when not raised below. See, e.g., *State* v. *DeMatteo,* 186 Conn. 696, 705–706, 443 A.2d 915 (1982); *State* v. *Perez,* 181 Conn. 299, 311, 435 A.2d 334 (1980); *State* v. *Arroyo,* 180 Conn. 171, 173–74, 429 A.2d 457 (1980).

Here, the trial court explained to the jury that the state had to prove the defendant guilty beyond a reasonable doubt of every element of the charged offenses.

---

[3] At the end of the state's case and again at the close of all the evidence, the defendant claimed there was insufficient evidence of intent to commit a crime in the building and moved for judgment of acquittal on the burglary charge. These motions were denied and the defendant has not raised those denials as an issue on appeal. Instead, the defendant now challenges the trial court's charge to the jury.

[4] Practice Book § 854 provides in relevant part: "The appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or an exception has been taken immediately after the charge is delivered by the party appealing."

The court also instructed the jury on intent generally. The jury was further instructed that burglary consisted of the following elements: "For a conviction you must find it proved to your satisfaction beyond a reasonable doubt that the defendant knowingly entered or remained unlawfully in Hitchcock Gas Engines building. And, that the premises constitute a building that he entered. And, that the unlawful entry or remaining was effected or occurred with the defendant's intent to commit a crime in that building."

The court later emphasized that intent to commit a crime in the building was a separate element of burglary: "You must find that the unlawful [entry] or remaining was effected or occurred with the defendant's intent to commit a crime in that building. Burglary is an intent crime. In other words regardless of the nature of the intrusion claimed and even when it may be proved that the defendant entered or remained unlawfully within the building, it must be further proved that he had done so with intent to commit a crime therein."

Finally, the court reviewed the evidence from which the jury could infer an intent to commit a crime: "However, if you disbelieve the defendant's testimony as to the purpose of being there you may look at the other evidence to determine whether or not there was an intent to commit a crime. There was testimony to the fact that lockers were open. There's no testimony that anything was taken from the lockers except the possibility of the keys. In other words there's no testimony that cash was taken, clothes, tools, engines. Whether or not there was an opportunity to take them is another question for you to determine. One does not have to actually commit a crime to go on a premises with intent to commit a crime. You may have intent to commit a crime but never get the chance to do it."

The trial court, however, did not instruct the jury what specific crime or crimes this evidence might show an intent to commit and did not explain the elements of such crimes. The defendant argues, therefore, that the jury may have based its burglary verdict on a finding of intent to commit an act which was either part of the other elements of burglary or wholly noncriminal. We disagree.

An alleged defect in a jury charge which raises a constitutional question is reversible error if it is reasonably possible that, considering the charge as a whole, the jury was misled. *State* v. *Ruiz,* 171 Conn. 264, 273–74, 368 A.2d 222 (1976); *State* v. *Rose,* 169 Conn. 683, 687–88, 363 A.2d 1077 (1975). "Whether a charge is possibly misleading depends on the substance rather than the form of what is said." *State* v. *Kurvin,* 186 Conn. 555, 565, 442 A.2d 1327 (1982). Although the trial court did not explicitly instruct the jury on what crimes it could find the defendant had an intent to commit in the building, the charge was not misleading. First, the court clearly indicated that intent to commit a crime was an element of burglary separate from breaking into or remaining unlawfully in a building. The jury could not have been misled into using evidence of the defendant's entry of and presence in the shop building to find that the defendant intended to commit a crime therein. Second, the court's review of the evidence regarding the opportunity to take property clearly guided the jury to consider whether the defendant intended to commit larceny. Given the court's careful relation of the evidence to the elements of the burglary charge, it is not reasonably possible that the jury was misled by the court's failure to read the statutory name and definition of larceny.

"The charge must give 'the jury a clear understanding of the elements of the crime charged and the proper guidance to determine if those elements were present.'

*State* v. *Avila,* 166 Conn. 569, 574, 353 A.2d 776 (1974)." *State* v. *Kurvin,* supra, 573 (*Speziale, C. J.,* dissenting). Taken as a whole and specifically related to the facts of this case, it was not reasonably possible that the trial court's instructions failed to guide the jury to a clear understanding of the offense.

This finding of no error is not to be understood as approval of the charge as given. See *State* v. *Kurvin,* supra, 569. The better practice would have been to instruct the jury on the statutory names and definitions of specific crimes for which there was sufficient evidence of an intent to commit.

## II

The defendant's second claim of error relates to the charge of criminal impersonation. The defendant argues that there was insufficient evidence to support his conviction on this charge. We agree.

General Statutes § 53a-130 (a)[5] provides, in relevant part, that a person is guilty of criminal impersonation when he or she "[i]mpersonates another and does an act in such assumed character with intent to obtain a benefit or to injure or defraud another." The gravamen of the defendant's challenge to his criminal impersonation conviction is that giving a false name is not impersonation of another unless the name given is that

[5] General Statutes § 53a-130 provides: "(a) A person is guilty of criminal impersonation when he: (1) Impersonates another and does an act in such assumed character with intent to obtain a benefit or to injure or defraud another; or (2) pretends to be a representative of some person or organization and does an act in such pretended capacity with intent to obtain a benefit or to injure or defraud another; or (3) pretends to be a public servant, or wears or displays without authority any uniform or badge by which such public servant is lawfully distinguished, with intent to induce another to submit to such pretended official authority or otherwise to act in reliance upon that pretense.

"(b) Criminal impersonation is a class B misdemeanor."

of a real person.[6] Because no evidence was adduced at trial regarding the existence of a real Sam James, the defendant argues that this conviction cannot stand. The state concedes the evidence does not support a finding that the defendant impersonated a real person, but contends that "another" means fictitious as well as real persons.

The primary rule of statutory construction is that "[i]f the language of the statute is clear, it is assumed that the words themselves express the intent of the legislature; *Houston* v. *Warden,* 169 Conn. 247, 251, 363 A.2d 121 (1975); *Hurlbut* v. *Lemelin,* 155 Conn. 68, 73, 230 A.2d 36 (1967); and thus there is no need to construe the statute. *Bell* v. *Planning & Zoning Commission,* 173 Conn. 223, 226, 377 A.2d 299 (1977); *Houston* v. *Warden,* supra, 251; *Hartford Hospital* v. *Hartford,* 160 Conn. 370, 375–76, 279 A.2d 561 (1971)." *Anderson* v. *Ludgin,* 175 Conn. 545, 552, 400 A.2d 712 (1978). "[T]he words of [a] statute 'are to be given their commonly approved meaning, unless a contrary intent is clearly expressed.' *Holmquist* v. *Manson,* 168 Conn. 389, 393, 362 A.2d 971 (1975); *State* v. *Antrum,* 185 Conn. 118, 122, 440 A.2d 839 (1981); General Statutes § 1-1." *State* v. *Kish,* 186 Conn. 757, 764, 443 A.2d 1274 (1982). The plain, commonly approved meaning of "another" is "an additional one of the same kind . . . one other than oneself." Webster, Third New International Dictionary (1971). To impersonate another is to act as some other real person.[7]

---

[6] The defendant also argues that the doing of an act, in addition to the giving of a false name, is necessary to satisfy the act requirement of General Statutes § 53a-130 (a) (1) and that his passive acquiescence in the police fingerprinting and photographing procedures was not an act within the meaning of the statute. Because of our holding on the meaning of impersonation of another, we do not reach this issue.

[7] Even if we were to assume that the phrase "impersonates another" is ambiguous, the same result is dictated by the principle of statutory interpretation necessarily used to resolve the ambiguity. It is axiomatic that criminal statutes "are to be strictly construed to protect the fundamen-

The argument advanced by the state that the evil which the legislature intended to prevent by enacting this statute is the same whether the name falsely given is that of a fictitious or a real person is one that should be made to the legislature.[8] We must look at the law as drafted, not at its purported aim. " '[I]n the interpretation of statutes, the intent of the legislature is to be found not in what it meant to say, but in what it did say.' *Gomeau* v. *Forrest,* 176 Conn. 523, 526, 409 A.2d 1006 (1979); *State* v. *Grant,* 176 Conn. 17, 20, 404 A.2d 873 (1978)." *State* v. *Roque,* 190 Conn. 143, 150, 460 A.2d 26 (1983). " 'A legislative intention not expressed in some appropriate manner has no legal existence.' *Willoughby* v. *New Haven,* 123 Conn. 446, 454–55, 197 A. 85 [1937]." *Edmundson* v. *Rivera,* 169 Conn. 630, 633, 363 A.2d 1031 (1975). The statute as written does not prohibit giving a false name; it prohibits impersonating another. "Had the legislature anticipated the case before the court, it is not improbable, that they would have employed expressions prohibitory of the act

tal constitutional right to liberty." *State* v. *Cook,* 183 Conn. 520, 522, 441 A.2d 41 (1981); see *State* v. *Moore,* 158 Conn. 461, 465, 262 A.2d 166 (1969); *State* v. *Penner,* 85 Conn. 481, 484, 83 A. 625 (1912). "In extension of the letter of the law, nothing may be assumed by implication; nor may the mischief *intended* to be prevented or redressed, as against the offender, be regarded in its construction. It was the object of the principle, to establish a certain rule, by conformity to which mankind should be safe, and the discretion of the judge limited." (Emphasis in original.) *Daggett* v. *State,* 4 Conn. 60, 63–64, 10 A.D. 100 (1821). This is especially true when, as here, the law in question creates criminal liability unknown at common law. See *State* v. *Kish,* 186 Conn. 757, 765, 443 A.2d 1274 (1982); *Nowak* v. *Nowak,* 175 Conn. 112, 124, 394 A.2d 716 (1978). Criminal convictions will be upheld only when the defendant's behavior is clearly forbidden by the statute under which he or she has been prosecuted. The text of General Statutes § 53a-130 (a) (1) does not clearly forbid the giving of the name of a fictitious person. The statute must therefore be read as not prohibiting such conduct.

[8] The defendant persuasively notes that when a real person is impersonated, and only then, a significant measure of damage is done to him or her over and above the harm suffered by the person deceived by the impersonator.

which is prosecuted. Such expressions, however, do not exist; and the statute, therefore, has not been violated." *Daggett* v. *State,* 4 Conn. 60, 64, 10 A.D. 100 (1821). If the legislature wishes to forbid the fraudulent use of false names generally, it is free to do so. Unless and until it does so, this court should not act in its place.[9]

The trial court erred in denying the defendant's motion for judgment of acquittal on the charge of criminal impersonation because there was insufficient evidence for the jury to find that the defendant committed that crime.

There is no error in the defendant's conviction of the crime of burglary in the third degree. There is error in the defendant's conviction of the crime of criminal impersonation, that judgment of conviction is set aside, and the case is remanded to the trial court with direction to render a judgment of acquittal on that charge.

---

[9] We note that "another" is employed to refer to a real person throughout the penal code. See, e.g., General Statutes § 53a-119 (larceny includes "intent to deprive another of property"); General Statutes § 53a-127 (a) (fraudulent procurement of the benefit of the labor of a state employee for oneself "or another"); General Statutes § 53a-129 (misapplication of "personal property of another"). The state admits that aside from its claim here, "another" is not used in the penal code to mean ficticious as well as real persons.