[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed July 11, 1996
This appeal has been initiated by the plaintiff-appellant. Burndy Corporation, against the defendant-appellees, the Planning and Zoning Board of the City of Milford and the Wampus Lane LLC who have been substituted for James Attolino, one of the original defendants. The appeal is from a decision of the Planning and Zoning Board granting a zone change for the subject property. The zone change was for a parcel of land consisting of approximately 24 acres off Wampus Lane in the City of Milford. The zone change is from heavy industrial (HI) to multiple-family residential (RMF).
The defendant, James Attolino, applied to the Planning and Zoning Board for a change of zone for a 24-acre parcel of land located off Wampus Lane, Milford. This is a closed-end road and the entire area is zoned HI. Requested was a change of zone from HI to RMF.
A public hearing was held on January 20, 1987 at which the plaintiff and other area owners appeared and voiced their concerns. On May 19, 1987, the Board voted five-to-four in favor of the change of zone. Publication of the notice took place on May 21, 1987. The plaintiff has appealed from this decision and it is this appeal that is presently before the court.
The plaintiff, Burndy Corporation, being an abutting owner, is an aggrieved person within the definition of same as found in § 8-8(a)(1) of the Connecticut General Statutes.
This appeal has been brought in two counts. The first count claims that the zone change did not receive a majority vote of all the members of the Board as required by § 8-3(b) of the Conn. General Statutes and therefore failed.
As pertinent, § 8-3(b) reads as follows:
 Such regulations and boundaries shall be established, changed or repealed only by a majority vote CT Page 5204-JJJ of all the members of the zoning commission except as otherwise provided in this chapter . . .
The Board consisted of ten members and the vote as recorded was five-to-four in favor of the application. The issue to be decided is whether "a majority vote of all the members" means a majority vote of the entire board or a majority vote of those members present. (Emphasis added.)
Black's Law Dictionary, Fifth Edition, defines the word "all" as:
Means the whole of — used with a singular noun or pronoun and referring to amount, quantity, extent, duration, quality or degree. The whole number or sum of — used collectively, with a plural noun or pronoun expressing an aggregate. Every member of individual component of, each one of— used with a plural noun. (Emphasis added.)
Webster's Ninth New Collegiate Dictionary defines "all" as meaning:
Every member or individual component of.
"The primary rule of statutory construction is that if the language of the statute is clear it is assumed that the words themselves express the intent of the legislature; and thus there is no need to construe the statute. The words of a statute are to be given their commonly approved meaning unless a contrary intent is clearly expressed." State v. Smith, 194 Conn. 213, 221
(italics and internal citations omitted.)
In defining what was meant by the phrase "all members of the zoning commission" the court in Steven's, Inc. v. Town Planningand Zoning Commission found that to mean, `all authorized members of the commission.' "Steven's, Inc. v. Town Planning and ZoningCommission, 149 Conn. 74, 78.
The phraseology of § 8-3 (b) "all the members of" clearly expresses the fact that the total membership of the commission was to be taken into consideration in determining a majority. Since the total membership consisted of ten members, a majority of the membership would be six. Thus, a vote of five-to-four would not be a majority and therefore the application for a zone change would fail. CT Page 5204-KKK
The second count alleges that the Board acted illegally, arbitrarily and in abuse of its discretion in that the change of zone took place without any change of circumstances, that the change was not in conformity with the intent and purpose of the Plan of Development and was not in conformity with the comprehensive plan.
In amending its regulations, a local zoning authority acts in a legislative rather than an administrative capacity. While this gives the Board broad discretion, this discretion is not unlimited. Parks v. Planning and Zoning Commission, 178 Conn. 657,661.
"The test of the action of the commission is two-fold: (1) The zone change must be in accord with a comprehensive plan, General Statutes § 8-2. Summ v. Zoning Commission, 150 Conn. 79,87, 186 A.2d 160, and (2) it must be reasonably related to the normal police power purposes enumerated in § 8-2; Summ v.Zoning Commission, supra, 91." First Hartford Realty Corporationv. Planning Zoning Commission, 165 Conn. 533, 541.
"A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential use of the properties. State v. Huntington, 145 Conn. 394, 399,143 A.2d 444; Nutter v. Town Planning Commission, 142 Conn. 265, 269,113 A.2d 504. The basic purpose of requiring conformance to a comprehensive plan is to prevent the arbitrary, unreasonable and discriminatory exercise of the zoning power. Nutter v. TownPlanning Commission, supra 268." Summ v. Zoning Commission,150 Conn. 79, 88.
The right to zone rests on the reasonable exercise of the police power in the public interest thus the right to adopt any zoning regulations or amendments thereto must meet whatever conditions are necessary to protect the public health, safety, convenience and property values. Summ v. Zoning Commission,supra, 91.
Section 8-3(c)of the Conn. General Statutes provides that whenever a zoning commission makes a change in a regulation on boundary, it shall state upon its records the reasons why such change was made. In First Hartford Realty Corp., supra at 543, CT Page 5204-LLL the court stated:
 Whenever a zoning authority has stated its reasons for a zone change in accordance with General Statutes Section 8-3, the reviewing court ought only to determine whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations.
The Commission gives as its reasons for granting the zone change: that the proposed change would allow the board to require strong environmental protection standards; that the current zone as a permitted use would require approval if the plans met the regulations; that it is a mistake to allow industrial development adjacent to an environmentally sensitive area with a greater potential of contributing exotic pollutants to a sensitive area; that it is not good planning to perpetuate a previously bad use decision when there is an opportunity to reverse the same; that traffic to and from a multifamily development would not contribute to traffic congestion, such volume being less than heavy industrial and single family generation.
The Commission in approving any industrial zone site plan would have the authority to impose any restrictions it felt might be necessary to improve or protect any environmentally sensitive area. In addition, there is nothing in the record to substantiate that an industrial area adjacent to any environmentally sensitive area has a greater potential for exotic pollutants to affect the area nor is there any evidence in the record that the previous decision of the Commission in defining the area as industrial was a mistake. There is no evidence that the Commission has been perpetuating a previously bad use decision.
Furthermore, it cannot be said that the zone change herein is in conformity with the comprehensive plan. The subject area is a relatively small portion of the overall area zoned heavy industrial (HI). It is completely surrounded by land that is zoned heavy industrial (HI) or abutted by a large environmentally sensitive area. The only ingress or egress is over a narrow road approximately 26 feet across. A railroad track bounds the area. Wampus Lane traffic would more than double with a serious cross-over traffic condition existing during the morning rush hour. The proposed zone change is contrary to the comprehensive plan of CT Page 5204-MMM development.
The court finds that not only has the proposed zone change failed to obtain a majority vote of the entire commission, but that the proposed zone change fails to be in accord with the comprehensive plan and is not reasonably related to a proper exercise of the normal police power. The court finds the issues for the plaintiff-appellant. The actions of the Milford Planning and Zoning Commissioner are hereby overruled.
CURRAN, S.T.R.