## STATE OF CONNECTICUT *v.* DAMEISHA MOORE
### (AC 25696)

Bishop, Harper and McDonald, Js.

Argued April 25—officially released August 22, 2006

*Todd A. Bussert*, with whom, on the brief, was *Luis A. Medina*, for the appellant (defendant).

*Proloy K. Das*, assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan*, state's attorney, and *Stephen J. Sedensky III*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Dameisha Moore, appeals from the judgment of conviction, rendered after a jury trial, of larceny in the sixth degree in violation of General Statutes § 53a-125b (a), accessory to criminal impersonation in violation of General Statutes §§ 53a-8 (a) and 53a-130 (a) (1), and failure to appear in the second degree in violation of General Statutes § 53a-173 (a) (1).[1] On appeal, the defendant claims that there was insufficient evidence to support her conviction of accessory to criminal impersonation and failure to appear in the second degree.[2] We affirm in part and reverse in part the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 4:30 p.m. on September 4, 2003,

---

[1] The court imposed a total sentence of one year imprisonment, execution suspended immediately, and two years of conditional discharge.

[2] The defendant does not challenge the conviction of larceny in the sixth degree.

while shopping at a Costco store in Brookfield, the defendant took a sealed package containing a telephone off a shelf and placed it in her shopping carriage. She walked to another aisle and tried to open the package but was unable to do so because of its heavy plastic wrapping. As a result, she put the telephone back on the shelf, proceeded to an aisle containing tools and opened a package of drill bits. The defendant then returned to the telephone package and used a drill bit to pry it open. She placed all of the telephone components in her bag and walked toward the exit of the store.

Before she reached the door, the defendant was stopped by Carlton Newell, a loss prevention agent who had been observing her activities. Newell informed the defendant of his suspicions, at which point a struggle ensued between the defendant and Newell, causing the defendant to drop her bag. The contents of her bag, including the telephone components, spilled onto the floor.

Shortly thereafter, Jameson Zaloski, an officer from the Brookfield police department, arrived at the scene and interviewed Newell and the defendant. He obtained the driver's license of the defendant, which identified her as Dameisha J. Moore. The defendant informed Zaloski that she had been married recently and that her married name was Dameisha Baptiste, but Zaloski was unable to verify this information through state records or a license check. On the basis of his investigation, Zaloski arrested the defendant on a misdemeanor summons, which required her to appear in court on September 16, 2003. The defendant signed her name on the misdemeanor summons as "Dameisha Baptiste."

At the time of her arrest, the defendant was a bail bondsperson in Danbury. In an effort to conceal her arrest from the people with whom she worked at the

Danbury courthouse, the defendant sent Ketura Henderson, a close friend, to meet with Vicki H. Hutchinson, a defense attorney in Danbury. The defendant arranged the meeting with Hutchinson by telephone and then gave Henderson the misdemeanor summons and $300.

On September 12, 2003, Henderson met with Hutchinson at her office. She told Hutchinson that her name was Daneisha Baptiste, that she had been arrested for shoplifting at Costco and that she had an upcoming court appearance. Henderson paid Hutchinson $300 for her representation at the court appearance. She also informed Hutchinson that she was related by marriage to the defendant, but that the defendant was not involved in the case and that she did not want the defendant to learn of her arrest. Hutchinson told Henderson that she had a scheduling conflict on September 16, 2003, and that she would contact the clerk's office to request that the hearing be continued to September 19. She told Henderson that she would contact her if there were any problems obtaining a continuance. On September 15, Hutchinson filed an appearance on behalf of Daneisha Baptiste and requested a continuance. The court granted the continuance that day and rescheduled the defendant's court appearance for September 19.

On September 16, the prosecutor called the case against the defendant, but the clerk noted that it had been continued to September 19. The next day, Hutchinson saw the defendant in a hallway of the courthouse. The defendant told Hutchinson that she had heard that her cousin's case had been called the day before and that she thought it had been resolved. Hutchinson advised her that the case had been continued to September 19.

On September 18, Hutchinson met with Deborah Mabbett, an assistant state's attorney, about the defendant's case. During their conversation, Mabbett

informed Hutchinson that the defendant was the bond-sperson who worked regularly in the Danbury courthouse. Hutchinson disagreed and noted that someone else had retained her for this matter. Mabbett said that she would confirm the defendant's identity through a photograph taken after the incident at Costco and further informed Hutchinson that the state intended to file a substitute information charging the defendant with robbery.

In the meantime, Henderson had reconsidered her actions and decided not to impersonate the defendant in court. When she spoke to Hutchinson, she asked Hutchinson to try to continue the hearing on September 19 to a later date, but Hutchinson refused because she was aware that Henderson was not the defendant in this case. The defendant's case was called on September 19. Hutchinson was present, but neither the defendant nor Henderson was in court. At that time, the state filed a substitute information charging the defendant with robbery in the third degree. The defendant's case was called a second time later that morning, but the defendant still was not present. Consequently, the court ordered that the defendant be rearrested. Additional facts will be set forth as necessary.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the

basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Ledbetter*, 275 Conn. 534, 542, 881 A.2d 290, (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006).

I

The defendant first claims that there was insufficient evidence to convict her of being an accessory to criminal impersonation. We disagree.

General Statutes § 53a-130 (a) provides in relevant part: "A person is guilty of criminal impersonation when he: (1) Impersonates another and does an act in such assumed character with intent to obtain a benefit or to injure or defraud another . . . . " Because the defendant was charged as an accessory, the state had to prove that the defendant, while acting with the intent required for criminal impersonation, solicited, requested, commanded, importuned or intentionally aided another person, in this case Henderson, to engage in criminal impersonation. See General Statutes § 53a-8 (a).

The defendant argues that there was insufficient evidence to support a conviction for being an accessory to criminal impersonation because § 53a-130 (a) (1) does not prohibit the giving of a false name unless the name provided is that of a real person. See *State* v. *Smith*, 194 Conn. 213, 221–22, 479 A.2d 814 (1984). She contends that, because Henderson provided Hutchin-

son with the name Daneisha Baptiste, a fictitious name, there was insufficient evidence that she was impersonating a real person. Although we recognize that the mere act of providing a false name does not expose an individual to culpability for criminal impersonation, we disagree with the defendant that this is the end of the inquiry under the facts of this case.

In *Smith*, the defendant was convicted of criminal impersonation for providing a false name to an arresting police officer. Id., 216. Our Supreme Court reversed the conviction, concluding that "[t]he statute as written does not prohibit giving a false name; it prohibits impersonating another." Id., 222. If Henderson had *only* provided Hutchinson with a fictitious name, then we agree that, under *Smith*, there may have been insufficient evidence that she had impersonated another. In the present case, however, Henderson told Hutchinson that her name was Daneisha Baptiste, that she was the individual who was arrested for shoplifting at Costco and that she had a court appearance on September 16. Thus, in addition to providing a false name, Henderson provided Hutchinson with information such that she specifically identified herself as the defendant in this case, at the defendant's request. Unlike the facts of *Smith*, therefore, Henderson did impersonate a real person—the defendant; that she also referred to the defendant by a false name is immaterial for the purposes of culpability under § 53a-130 (a) (1).

The defendant further argues that there was insufficient evidence that she intended to defraud another by aiding Henderson. Regardless of whether there was evidence that the defendant intended to defraud another, there was evidence that the defendant intended to obtain a benefit by aiding Henderson. To warrant conviction under § 53a-130 (a) (1), the statute requires that Henderson had impersonated another "with intent to obtain a benefit *or* to injure *or* defraud

another . . . ." (Emphasis added.) General Statutes § 53a-130 (a) (1). Because this provision is expressed in the disjunctive, the jury only had to find that Henderson and the defendant intended one of these consequences. See, e.g., *State* v. *Van Eck*, 69 Conn. App. 482, 503 n.23, 795 A.2d 582, cert. denied, 260 Conn. 937, 802 A.2d 92, 261 Conn. 915, 806 A.2d 1057 (2002). There was evidence before the jury that, by having Henderson impersonate the person who was arrested at Costco, the defendant sought to conceal her arrest from her coworkers at the Danbury courthouse. On the basis of the evidence presented at trial, it also was reasonable and logical for the jury to find that, by helping Henderson impersonate her, the defendant intended to obtain the benefit of avoiding prosecution.

To the extent that the defendant challenges her role as an accessory to Henderson's criminal impersonation, we find this argument unpersuasive as well. There was evidence before the jury that the defendant arranged a meeting between Henderson and Hutchinson to discuss the incident at Costco. In addition, there was evidence that the defendant gave Henderson the misdemeanor summons and $300 to retain Hutchinson. On the basis of these facts, we conclude that there was sufficient evidence from which the jury could find that, with the intent required for criminal impersonation, the defendant solicited, requested, commanded, importuned or intentionally aided Henderson. Accordingly, we conclude that there was sufficient evidence to convict the defendant of being an accessory to criminal impersonation.

## II

The defendant next claims that there was insufficient evidence to support her conviction of failure to appear in the second degree. We agree with the defendant.

The following additional facts are relevant to our review. On July 8, 2004, the state filed a substitute long

form information that charged the defendant with, inter alia, failure to appear in the second degree and charged that "at the [t]own of Danbury, during the month of September, 2003, the said [defendant], while charged with the commission of a misdemeanor and while released under procedure of law, she wilfully failed to appear when legally called according to the terms of her promise to appear, in violation of § 53a-173 (a) (1) . . . ." During its closing statement, the state argued that the defendant was not present in court on either September 16 or 19 and, further, that although she was required to be in court for an appearance on September 16, the defendant was not present.[3]

Adhering to the theory presented by the state, the court instructed the jury that "[f]or you to find the defendant guilty of [failure to appear in the second degree], the state must prove the following elements beyond a reasonable doubt: That the defendant was released on bail or under another procedure of law upon the condition that she appear personally in connection with her criminal proceeding at a future given date; that on September 16, 2003, the defendant was required to appear before a court or a judicial officer in connection with the charge of larceny in the sixth degree; and that the defendant wilfully failed to appear as required." The court did not reference September 19 at any point during its instructions on the charge of failure to appear in the second degree.

To support a conviction for failure to appear in the second degree in violation of § 53a-173 (a) (1), the state

[3] In reviewing the evidence, the prosecutor noted: "You heard from assistant state's attorney Deborah Mabbett . . . . [Y]ou heard her testify with regard to September 16 and September 19, the defendant is never in court when the case is called. You know, from Officer Zaloski and the misdemeanor summons, that she had a court appearance that was required on September 16; she never shows, no date."

must prove beyond a reasonable doubt that the defendant "while charged with the commission of a misdemeanor . . . for which a sentence to a term of imprisonment may be imposed and while out on bail or released under other procedure of law . . . wilfully fail[ed] to appear when legally called according to the terms of his . . . promise to appear . . . ." General Statutes § 53a-173 (a) (1). Because the court's instructions to the jury focused on the defendant's failure to appear on September 16, we confine our review to whether there was sufficient evidence to convict the defendant of failure to appear in the second degree with respect to that date. See *State* v. *Fauci*, 87 Conn. App. 150, 163, 865 A.2d 1191 (noting that absent contrary evidence, we presume juries follow instructions given by trial judge), cert. granted on other grounds, 273 Conn. 921, 871 A.2d 1029 (2005).

When the defendant was arrested for shoplifting, she was given a misdemeanor summons that required her to appear in court on September 16. On September 15, however, the court continued the hearing to September 19. As a result, the defendant legally was not required to appear until September 19, and her failure to appear on September 16 was of no legal consequence.[4] Under these circumstances, we cannot say that the evidence reasonably supported the jury's conclusion that the defendant was guilty of failure to appear in the second degree.

The judgment is reversed with respect to the conviction of failure to appear in the second degree and the

---

[4] The state made several arguments before this court supporting the conviction for failure to appear on September 16. First, the state argued that notwithstanding the continuance to September 19, the defendant still had an obligation to appear in court on September 16. The state also argued that the court lacked the authority to continue the hearing to September 19 because it had been requested by an attorney who was not retained by the defendant. We find both of these arguments to be wholly without merit.

case is remanded with direction to render judgment of not guilty of that crime. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.