******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* KYLE A.*
## (SC 20721)

McDonald, D'Auria, Mullins, Ecker, Alexander,
Dannehy and Cradle, Js.

*Syllabus*

Convicted, after a jury trial, of burglary in the first degree, criminal mischief
in the first degree, and threatening in the second degree, among other
crimes, the defendant appealed. The defendant had contacted his
brother, A, and told A that he was coming to A's residence despite
A's contrary wishes. The defendant thereafter unlawfully entered A's
residence. A fled the residence and sought aid from certain neighbors.
Subsequently, the defendant damaged certain property within the resi-
dence and, while outside, repeatedly struck A's car with a baseball bat.
At trial, defense counsel neither requested an instruction on the burglary
charge nor objected to the proposed instruction that the court had
distributed to the state and defense for review. The jury returned a
guilty verdict on all of the charges pertaining to the incident, including
burglary. The Appellate Court affirmed the defendant's convictions, and
the defendant, on the granting of certification, appealed to this court.
*Held*:

The Appellate Court correctly concluded that the trial court had not
committed plain error when it gave a jury instruction on first degree
burglary that did not identify the crime or crimes the defendant allegedly
was intending to commit when he unlawfully entered or remained in A's
residence, this court having concluded that such an omission was not
an obvious and indisputable error so egregious that it affected the fairness
and integrity of and public confidence in the judicial proceedings:

When instructing a jury on the elements of burglary in the first degree
pursuant to the applicable statute (§ 53a-101 (a) (1)), a trial court should
name and define the elements of the crime or crimes for which there is
evidence to support a finding of the defendant's intent to commit in
connection with the unlawful entry or remaining, and, although it is the
better practice for trial courts to name the crime or crimes and define
such elements in its instructions, this court has never clearly held that
such an instruction is mandatory.

Although the trial court in the present case did not name the relevant
crimes and describe the elements thereof in its instruction on first degree
burglary, the court's instruction accurately recited the elements of the
burglary charge and offered guidance on how to interpret them, making
it clear that the intent to commit a crime within the building is a distinct
element, which lessened the chance that the jury would have improperly
found that the defendant's unlawful entry itself was the crime he intended
to commit.

Moreover, defense counsel did not object to the part of the charge
describing the elements of burglary in the first degree or propose an
instruction that would have included the language of the intended
offense.

Furthermore, the trial court's statement of the applicable statute did not
mislead the jury as to what evidence it could consider, and, although the
court's instruction included an incomplete explanation of the elements
of burglary in the first degree, this court concluded that it would be a
significant departure from its precedent to hold that the trial court's
oversight in this regard was the kind of truly extraordinary situation
contemplated by the plain error doctrine.

In addition, even if there had been a patent error in the court's instruction,
reversal on plain error grounds would not be warranted because the
omission did not result in a manifest injustice, the evidence having
established that the defendant violently forced his way into A's residence
and caused extensive damage therein, the court having properly
instructed the jury on the elements of first degree criminal mischief, and

the jury having necessarily concluded that the defendant had intended to damage the tangible property of another by finding the defendant guilty of criminal mischief.

Notwithstanding the defendant's argument that his criminal mischief conviction may have been based solely on the damage he caused to A's car outside of A's residence, this court saw no reason why the jury would have focused exclusively on the damage to the car and ignored the significant destruction the defendant caused inside A's residence, and the fact that the prosecutor, during closing argument, directed the jury's attention to the criminal mischief charge and other possible intended crimes made it less likely that the jury based its verdict on noncriminal conduct.

Argued October 25, 2023—officially released January 30, 2024

*Procedural History*

Substitute information, in the first case, charging the defendant with the crimes of burglary in the first degree, criminal mischief in the first degree, and threatening in the second degree, substitute information, in the second case, charging the defendant with the crime of criminal violation of a protective order, substitute information, in the third case, charging the defendant with the crime of tampering with a witness, and substitute information, in the fourth case, charging the defendant with the crime of attempt to commit criminal violation of a protective order, brought to the Superior Court in the judicial district of Ansonia-Milford and tried to the jury before *McShane, J.*; verdicts and judgments of guilty, from which the defendant appealed to the Appellate Court, *Elgo*, *Suarez* and *Sullivan, Js.*, which affirmed the trial court's judgments, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Julia K. Conlin*, assigned counsel, with whom was *Emily Graner Sexton*, assigned counsel, for the appellant (defendant).

*Rocco A. Chiarenza*, senior assistant state's attorney, with whom, on the brief, was *Margaret E. Kelley*, state's attorney, for the appellee (state).

*Opinion*

DANNEHY, J. The defendant, Kyle A., was convicted, following a jury trial, of burglary in the first degree in violation of General Statutes § 53a-101 (a) (1) (burglary), as well as certain other offenses, after unlawfully entering a residence and destroying certain property therein. We granted certification to appeal from the judgment of the Appellate Court affirming, inter alia, the trial court's judgment of conviction of burglary.[1] In the present appeal, the defendant contends that the Appellate Court incorrectly concluded that the trial court had not committed plain error when it failed to give a jury instruction identifying the crime that he allegedly intended to commit when he unlawfully entered or remained in the residence. We conclude that, although the trial court's instruction did not conform to the language that this court has repeatedly endorsed, the trial court did not commit plain error. Accordingly, we affirm the judgment of the Appellate Court.

The jury reasonably could have found the following facts. At the time of the incident that led to his arrest and conviction, the defendant had been living in Maryland but had made plans to move back to Connecticut. He intended to stay at a residence in West Haven that was owned by the defendant's mother, J, but was in the sole possession and control of the defendant's brother, A, who lived there with his daughter, who was eight years old at the time of the incident.[2]

The morning after he had been expected to arrive at the residence, the defendant called A and made statements that led A to believe that he was intoxicated. A advised the defendant that he would not be allowed into the home if he had been drinking because A's daughter was there. The defendant agreed to wait until he was no longer intoxicated before coming to the house. In two subsequent conversations that day, A reiterated that the defendant could not come to the home if he was intoxicated. During their third and final conversation, the defendant told A that he was coming to the house "whether [A] [liked] it or not . . . ."

When the defendant arrived at the residence that afternoon, only A and his girlfriend, T, were present.[3] The defendant, who did not have a key, began yelling and banging on the front door. When no one let him in, he broke a back door window and entered the home. A and T fled the house and sought aid from their neighbors. They then observed the defendant, who had emerged from the house and was in the driveway, repeatedly striking A's car with a baseball bat.

By the time the police arrived shortly thereafter, the defendant had gone back into the home and began "destroying things . . . ." When the defendant eventually came out of the house and the police were taking him into custody, he yelled at A that he was "going to

kill [A] when [he got] out of this," a threat that he repeated later that day at the police station. Upon investigating the interior of the home, the police discovered shards of wood that they identified as fractured pieces of the baseball bat, as well as a television, a ceramic tabletop, and kitchen chairs that had been smashed.

The defendant was charged with burglary, criminal mischief in the first degree (criminal mischief), and threatening in the second degree (threatening) for his actions during the confrontation. Following his arrest, a criminal protective order was issued. The defendant was subsequently charged with criminal violation of a protective order, tampering with a witness, and attempt to commit criminal violation of a protective order. At trial, defense counsel neither requested an instruction on the burglary charge nor objected to the proposed instruction that the court had distributed to the parties for review. The trial court instructed the jury on that charge in relevant part: "[A] person is guilty of burglary in the first degree when he unlawfully enters or remains in a building with the intent to commit a crime therein and he is armed with a dangerous instrument.

\* \* \*

"The second element is that the defendant unlawfully entered or remained in the building with the intent to commit a crime in that building. A person acts intentionally with respect to a result when his conscious objective is to cause such result. Even if the defendant never actually committed a crime in the building, if the evidence establishes beyond a reasonable doubt that there was such an intention, this is sufficient to prove the defendant unlawfully entered or remained in the building with the intent to commit a crime therein. Furthermore, the necessary intent to commit a crime must be an intent to commit either a felony or misdemeanor in addition to the unlawful entering or remaining in the building."

The jury ultimately returned a guilty verdict on all six charges pertaining to the incident at A's residence and the defendant's subsequent behavior. The defendant then appealed to the Appellate Court from the judgments of conviction. In that appeal, the defendant claimed, among other things, that, when instructing the jury on the second element of the crime of burglary— that the defendant unlawfully entered or remained in the building *with the intent to commit a crime therein*—the trial court committed plain error when it failed to identify (1) the crime the defendant allegedly intended to commit, and (2) the elements of that crime. See *State* v. *Kyle A.*, 212 Conn. App. 239, 259–60, 274 A.3d 896 (2022).

The Appellate Court affirmed the defendant's burglary conviction, reasoning that there was no plain error

because the alleged error did not involve a failure to include mandatory statutory language or produce a manifest injustice. Id., 260–63. Although the Appellate Court noted that the trial court should have instructed the jury in more detail on the second element, it ultimately concluded that the omission was "unlikely to have guided the jury to an incorrect verdict . . . ." Id., 262–63. In reaching that conclusion, the Appellate Court pointed to the trial court's direction regarding intent to commit a felony or misdemeanor, the facts reflected in the evidence, and the prosecutor's suggestion during closing argument that the facts evinced the defendant's intent to commit three different crimes: criminal mischief, based on his destructive behavior inside of the home, threatening A, and assaulting A. Id., 262. This certified appeal followed.

Before this court, the defendant renews his claim that the trial court committed plain error by failing to identify and explain to the jury the elements of the crime he allegedly intended to commit while he was inside of the house, thereby allowing the jury to craft its own understanding of what constitutes a felony or misdemeanor. He contends that, without more specific guidance from the court, the jury could have decided that any behavior it considered morally offensive—such as his intention to confront his brother in his home— was a crime and, therefore, improperly have found the intent element to be satisfied on that basis. Noting that only jury instructions carry the weight and authority of the court, the defendant also rejects the contention that his criminal mischief conviction, the evidence presented at trial, or the prosecutor's references to possible intended crimes in her closing argument could compensate for this omission. Although we share the Appellate Court's concerns regarding the trial court's failure to describe the intended crimes; *State* v. *Kyle A.*, supra, 212 Conn. App. 262–63; we conclude that the defendant has not met the exceptionally high bar for demonstrating plain error in this case.

"It is well established that a defendant is entitled to have the jury correctly and adequately instructed on the pertinent principles of substantive law." (Internal quotation marks omitted.) *State* v. *Singleton*, 292 Conn. 734, 768, 974 A.2d 679 (2009). In the present case, to establish that the defendant committed burglary, the state was required to prove that he entered or remained unlawfully in A's residence with intent to commit a crime therein and was armed with a dangerous instrument. See General Statutes § 53a-101 (a) (1).

This court has consistently observed that, when giving a jury charge under § 53a-101 (a) (1), it is the "better practice" for the trial court to instruct the jury "on the statutory names and definitions of [the] specific crimes for which there was sufficient evidence of an intent to commit." *State* v. *Smith*, 194 Conn. 213, 220, 479 A.2d

814 (1984); see also Connecticut Criminal Jury Instructions 9.2-1, available at http://www.jud.ct.gov/JI/Criminal/ Criminal.pdf (last visited January 24, 2024).[4] Such an instruction informs the jury, the members of which are rarely well versed in legal principles, exactly what behavior is at issue and on what basis it should evaluate it. It thereby mitigates the risk that the jury will confuse conduct that is criminal with that which is merely unsavory. See, e.g., *State* v. *Langdell*, 187 Vt. 576, 581, 989 A.2d 556 (2009) ("[w]ithout being aware of the elements of the intended crime, a juror might mistakenly convict a defendant on faulty assumptions about what is criminal and what is not").

Relying primarily on this authority, the defendant in the present case contends that the trial court committed plain error when it failed to instruct the jury on the statutory names and elements of the crimes that he allegedly intended to commit when he entered A's residence. "[The plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party." (Internal quotation marks omitted.) *State* v. *Blaine*, 334 Conn. 298, 305, 221 A.3d 798 (2019). "It is axiomatic that, [t]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. . . . Put another way, plain error review is reserved for only the most egregious errors. When an error of such magnitude exists, it necessitates reversal." (Citation omitted; internal quotation marks omitted.) *State* v. *McClain*, 324 Conn. 802, 813–14, 155 A.3d 209 (2017). "[I]t is not enough for the defendant simply to demonstrate that his position is correct. Rather, the party seeking plain error review must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal." *State* v. *Coward*, 292 Conn. 296, 307, 972 A.2d 691 (2009).[5]

"An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable." (Internal quotation marks omitted.) *State* v. *Sanchez*, 308 Conn. 64, 77, 60 A.3d 271 (2013). "Although a complete record and an obvious error are prerequisites for plain error review, they are not, of themselves, sufficient for its application. . . . [I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate." (Internal quotation marks omitted.) Id. Thus, we employ a two-pronged test to determine whether plain error has occurred: "the defen-

dant must establish that (1) there was 'an obvious and readily discernable error,' and (2) that error 'was so harmful or prejudicial that it resulted in manifest injustice.' " *State* v. *Blaine*, supra, 334 Conn. 306. Our review of the Appellate Court's decision with respect to whether to reverse a trial court's judgment under the plain error doctrine is plenary. Id., 305.

When instructing the jury on the elements of § 53a-101 (a) (1), trial courts should name and define the elements of the crimes for which there is evidence to support a finding of an intent to commit, as the model criminal jury instructions call for. The trial court in the present case failed to do so. For several reasons, however, we cannot conclude that the trial court's omission was an obvious and indisputable error so egregious that it "affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Jamison*, 320 Conn. 589, 596, 134 A.3d 560 (2016).

Beginning with the first prong of the standard, the trial court's instruction accurately recited the elements of the burglary charge and offered guidance on how to interpret them. The court further made clear that the intent to commit a crime within the building is a distinct element, thereby lessening the chance that the jury would improperly find that the defendant's unlawful entry itself was the crime that he intended to commit.[6] See, e.g., *State* v. *Smith*, supra, 194 Conn. 219 (noting that "jury could not have been misled into using evidence of the defendant's entry of and presence in the shop building to find that the defendant intended to commit a crime therein"). We also observe that, although defense counsel raised several objections during the charging conference, he did not object to the part of the charge describing the elements of burglary or propose an instruction that would have included the language of the intended offense.[7]

Additionally, although our courts have repeatedly noted that it is the better practice for trial courts to include the elements of the intended crime when instructing the jury on the elements of § 53a-101 (a) (1), to date, we have never clearly held that such an instruction is mandatory. See, e.g., *State* v. *Zayas*, 195 Conn. 611, 618, 490 A.2d 68 (1985); *State* v. *Smith*, supra, 194 Conn. 220; *State* v. *Patterson*, 35 Conn. App. 405, 419, 646 A.2d 258, cert. denied, 231 Conn. 930, 649 A.2d 254 (1994). Moreover, although the model jury instruction reflects this language, as a general rule, we have declined to require the use of those instructions by trial courts and have emphasized their "discretionary" nature. *State* v. *Reyes*, 325 Conn. 815, 821–22 n.3, 160 A.3d 323 (2017). We therefore cannot conclude that the trial court's failure to identify the specific intended crime and its elements when it instructed the jury on the elements of § 53a-101 (a) was an indisputable, obvi-

ous error.

Finally, we emphasize that it has been especially rare for a jury instruction to be so clearly improper that our courts have deemed plain error review necessary to correct it. See *State* v. *Kelly*, 256 Conn. 23, 58 n.18, 770 A.2d 908 (2001). This court has done so when the trial court has affirmatively misstated the law; see *State* v. *Preyer*, 198 Conn. 190, 198–200, 502 A.2d 858 (1985) (concluding that trial court committed plain error when it incorrectly instructed jury that cohabitation was not defense to charge of sexual assault in first degree); and when it has failed to comply with a statute that mandates a particular instruction. See *State* v. *Ruocco*, 322 Conn. 796, 801–802, 144 A.3d 354 (2016) (concluding that trial court committed plain error when it failed to instruct jury, as required by statute, that it could not draw unfavorable inferences from defendant's failure to testify). We do not suggest that there are no other circumstances in which an instruction could constitute plain error, but the reluctance with which we have chosen that course underscores that plain error is reserved for only the most egregious defects. In the present case, the trial court's statement of the governing statute did not mislead the jury as to what evidence it could consider, and the instruction included an accurate though incomplete explanation of the elements of burglary. It would be a significant departure from this court's precedent to hold that the trial court's oversight is the kind of "truly extraordinary" situation contemplated by the plain error doctrine. (Internal quotation marks omitted.) *State* v. *Jamison*, supra, 320 Conn. 596.

Even if we were to conclude that there was a patent error in the trial court's instruction, such a conclusion still would not warrant reversal on plain error grounds because the court's omission did not result in a manifest injustice. See, e.g., *State* v. *Blaine*, supra, 334 Conn. 306 (defendant must prove both obviously and readily discernable error and manifest injustice to prevail on claim of plain error). In support of his claim to the contrary, the defendant argues that, unlike in *State* v. *Zayas*, supra, 195 Conn. 618, reversal is required because the facts of the present case are "capable of varying interpretations, some criminal but others noncriminal, though perhaps morally offensive . . . ."

In *Zayas*, the defendant was apprehended after dark on the front porch of another person's house, carrying a screwdriver that matched two sets of pry marks on the sill of a storm window that had been pushed upward. Id., 613, 615. In its instruction to the jury, the trial court did not specify that the defendant had intended to commit larceny when he attempted to unlawfully enter the house. Id., 616. The defendant argued that, by failing to identify the intended crime suggested by the evidence, the court had allowed the jury to find him guilty on the basis of noncriminal conduct. Id. This

court, however, observed that "[c]ommon experience tells us that an unlawful entry into a dwelling at night is not without purpose," noted that pry marks on a windowsill "bespeak criminal purpose," and stated that to "any person of ordinary intelligence, the expected by-product of a surreptitious unlawful entry into the home of another is theft."[8] Id., 617–18. Therefore, the court concluded that there was no explanation for the defendant's behavior that would not satisfy the intent element.[9] Id., 618.

The defendant contends that, unlike the situation presented in *Zayas*, the evidence in the present case would support a finding that he entered the house seeking only to confront his brother, and the jury could have improperly ascribed criminal intent to that conduct. To accept this premise, however, would require this court to "find plain error without regard to the evidence in the case . . . ." *State* v. *Sanchez*, supra, 308 Conn. 84.

In the present case, the evidence established that the defendant had violently forced his way into A's residence and caused extensive damage with a baseball bat once inside. The court properly instructed the jury on the elements of criminal mischief, and the jury found the defendant guilty of that separate charge. By finding the defendant guilty of criminal mischief, the jury necessarily concluded that he intended to cause damage to the tangible property of another. See General Statutes § 53a-115 (a) (1). Although the defendant argues that his criminal mischief conviction may have been based solely on the damage he inflicted on his brother's car and, therefore, would not have been relevant to his intent to commit a crime inside of the residence, we see no reason why the jury would have focused exclusively on the damage to the car and ignored the significant destruction that the defendant wrought inside the residence, which multiple witnesses testified exceeded the $1500 in damages necessary to prove first degree criminal mischief.[10] The likelihood that the jury ignored the substantial evidence of the defendant's criminal behavior within the home, only to determine that he was guilty because they found that he had damaged A's car or found his plan to confront his brother distasteful, is far too remote for this court to conclude that a manifest injustice occurred.

The defendant correctly observes that a trial court's failure to instruct the jury on an element of an alleged crime is not cured by the presence of evidence sufficient to secure a conviction on that charge. See *State* v. *Anderson*, 212 Conn. 31, 37, 561 A.2d 897 (1989). This principle, however, is inapposite to the present case because the trial court did instruct the jury on each element of burglary, just not with the degree of specificity that the defendant now argues was necessary. "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." (Internal

quotation marks omitted.) *State* v. *Kurvin*, 186 Conn. 555, 563, 442 A.2d 1327 (1982). The evidence presented at trial and the prosecutor's references to criminal mischief and other possible intended crimes in her closing argument do not have the same effect as an instruction from the court, but the fact that the prosecutor directed the jury toward considering these offenses makes it all the less likely that the jury based its verdict on noncriminal conduct and, consequently, that the trial court's omission resulted in a manifest injustice requiring reversal.

During oral argument before this court, the state maintained that, in certain circumstances, it may be difficult to discern the intended crime or crimes. That may be so, but it is not the role of the jury to determine or select a particular crime or crimes. That obligation rests with the state. Here, the facts and circumstances of the case and the state of our case law prevent us from concluding that the trial court committed plain error. In the future, however, the failure of our courts to instruct the jury on the elements of a crime so identified by the state will constitute an obvious error that will warrant reversal if it results in a manifest injustice.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

\* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

[1] We granted certification to appeal, limited to the following issue: "Did the Appellate Court correctly conclude that the trial court's instruction on burglary in the first degree was not reversible error under the plain error doctrine?" *State* v. *Kyle A.*, 343 Conn. 930, 281 A.3d 1187 (2022).

[2] We declined to grant certification on the issue of whether the state's evidence was insufficient to prove burglary, a claim that rested largely on J's testimony that she had given the defendant permission to stay at the residence and the defendant's contention that A could not abrogate J's permission for him to be there.

[3] A had taken the precaution of bringing his daughter to a relative's house.

[4] The model instruction provides in relevant part: "In this case, the state claims that the defendant intended to commit *<insert crime>*. *<Refer to the count in which this crime was charged or, if uncharged, give the elements of the crime.>*." Connecticut Criminal Jury Instructions, supra, instruction 9.2-1.

[5] This court has acknowledged that, by imposing such an exacting standard, it is "willing to take the appellate risk of sanctioning a legally flawed trial court judgment" and that errors harmful enough to warrant reversal upon plenary review may be allowed to stand under the plain error rubric. *Santopietro* v. *New Haven*, 239 Conn. 207, 216, 682 A.2d 106 (1996).

[6] The court instructed the jury that "the necessary intent to commit a crime must be an intent to commit either a felony or a misdemeanor, *in addition to* the unlawful entering or remaining in the building." (Emphasis added.)

[7] We appreciate that, as the defendant has sought relief under the plain error doctrine, it is already apparent that he did not preserve this claim. Our observation is not meant to highlight defense counsel's failure to object but, rather, to emphasize that the evidence in this case so overwhelmingly supported the defendant's criminal intent that the absence of the intended offense from the court's instruction did not suggest a clear and obvious error.

[8] On appeal, reviewing courts may consider the evidence presented at trial to assess whether an instruction was specific enough to provide the jury with a clear understanding of the offense. See, e.g., *State* v. *Zayas*,

supra, 195 Conn. 617–18 (discussing adequacy of jury instruction in light of facts of case).

[9] We expressly noted that we did not approve of the trial court's instruction, which omitted the intended offense; *State* v. *Zayas*, supra, 195 Conn. 617–18; furthermore, our holding in *Zayas* should not be interpreted to mean that an instruction cannot be defective, as a matter of law, for failing to define the intended offense. But see *State* v. *Serrano*, 91 Conn. App. 227, 245 n.13, 880 A.2d 183, cert. denied, 276 Conn. 908, 884 A.2d 1029 (2005).

[10] Officer Eurico Dias of the West Haven Police Department conducted a walkthrough of the home after the incident and estimated the damage to be $3800. J testified that she received an insurance payout of approximately $5000 for the damage.